*J. S. Ferry* for the motion.

*N. W. Aluli* contra.

---

EMMA FORSYTH RUMSEY *v.* NEW YORK LIFE INSURANCE COMPANY AND BENSON, SMITH & COMPANY, LIMITED.

No. 1172.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.
HON. C. W. ASHFORD, JUDGE.

SUBMITTED SEPTEMBER 17, 1919.                     DECIDED OCTOBER 1, 1919.

KEMP AND EDINGS, JJ., AND CIRCUIT JUDGE DEBOLT
IN PLACE OF COKE, C. J., ABSENT.

INSURANCE—*beneficiary—insurable interest.*

> Where there are no ties of blood or marriage between the person whose life is insured and the person who procures the policy on such life there must be some pecuniary interest of the latter in the life of the former to sustain the insurance.  But an indirect advantage is sufficient.  It is enough that in the ordinary course of events pecuniary loss or disadvantage will naturally and probably result from the death of the one whose life is insured to the person obtaining the policy.

OPINION OF THE COURT BY EDINGS, J.

This is an appeal by the respondents New York Life Insurance Company and Benson, Smith & Company, Limited, from a decree entered in favor of the petitioner-appellee, Emma Forsyth Rumsey, finding. that the said Emma Forsyth Rumsey "do have and recover of and from respondent New York Life Insurance Company the sum of five thousand dollars ($5,000.00) with interest thereon at eight per cent. (8%) per annum from the 15th day of August, 1910, to date. * * * That respondent Benson, Smith & Company, Limited, acted as trustee for petitioner in receiving and retaining the sum of five thousand nine hundred fifty-nine and 55/100 dollars ($5959.55), the proceeds of a judgment rendered and entered in the above entitled court on the 8th day of February, A. D. 1913, in an action entitled: 'Benson, Smith & Company, Limited, an Hawaiian corporation, plaintiff, vs. New York Life Insurance Company, a corporation, defendant,' in favor of Benson, Smith & Company, Limited, respondent herein, and against New York Life Insurance Company, respondent herein, which judgment was paid on the 3rd day of April, A. D. 1913, and that said Benson, Smith & Company, Limited, holds said sum of money as trustee for petitioner" and must account, and pay over to her said sum less the sum paid by said Benson, Smith & Company to the New York Life Insurance Company as premiums on said policy.

The case was tried upon an agreed statement of facts, the parties stipulating that the same should be considered the evidence in the suit, provided that the court should have the right to disregard the stipulation where it found the testimony and depositions were in conflict with the same.

The record before this court discloses, among other

things, the following facts:   The petitioner instituted a
suit in equity against the two respondents for the purpose
of collecting the principal upon a policy of life insurance
heretofore issued by the respondent New York Life Insur-
ance Company upon the life of the petitioner's late hus-
band, Samuel L. Rumsey, who died July 17, 1910, while
said policy was in full force.   Benson, Smith & Company,
Limited, was incorporated in 1898.   The business had
theretofore been conducted as a private enterprise owned
exclusively by George W. Smith, who upon its incorpora-
tion became, and has ever since remained, its president
and manager.   Samuel L. Rumsey had been an employee
of the concern before its incorporation and upon its incor-
poration he subscribed to its capital stock, and later made
further subscriptions, whereby at the time of the severance
of his relations with Benson, Smith & Company, Limited,
in 1904, he was the owner of one hundred shares of the
capital stock of said corporation of the par value of one
hundred dollars per share.   The policy of insurance in
question was issued June 11, 1903.   At that time the stock
of said corporation was held as follows:   By George W.
Smith, 363 shares; by Samuel L. Rumsey, 100 shares; by
Alexis J. Gignoux, 30 shares; the remaining seven shares
being held by several other parties, the initial capitali-
zation having been $50,000.   In 1903, and prior to the
application for said policy, it was agreed between said
three principal stockholders, they being at the time also
the president and manager, treasurer and secretary of
said corporation, that they should mutually insure their
lives in the sum of five thousand dollars each, at the
expense of Benson, Smith & Company, Limited, and for
its benefit—Benson, Smith & Company, Limited, being
named as the beneficiary in such policy.   All premiums
upon the policy were paid by Benson, Smith & Company,
Limited, except that, some years later, Rumsey also paid

a separate premium to the New York Life Insurance Company. The payment was made to the agent of the insurance company at Denver, Colorado, by the attorney of the Rumseys. The receipt for the money given by the agent recites that the payment was received from the attorney "for his accommodation and at his request" and that "neither I nor the office of said company with which I am connected have any record or knowledge of said policy, or authority to collect a premium upon it." The insurance company tendered the money back and then paid it into court and the New York Life Insurance Company "has not since that time had or received said sum of money or any part thereof in its possession." In January 1904 Rumsey left the Territory of Hawaii and was never again actively connected with Benson, Smith & Company, Limited, or its business, and never again returned to the Territory. In February 1905 Rumsey resigned the office of treasurer, the salary of which ($250 per month) had apparently been paid to him up to that time. This retirement of Rumsey from the office of treasurer was caused because it had then "become apparent to him, the said Samuel L. Rumsey, and to said drug company, that he, said Samuel L. Rumsey, could not on account of the condition of his health ever return to the Territory of Hawaii, or ever again resume active connection with said drug company, or its business." Thereafter Rumsey did not draw any salary as an officer or as an employee of said corporation. While residing in the States Rumsey married the petitioner-appellee and later transferred to her all of his stock—one hundred shares—in said Benson, Smith & Company, Limited. This stock was later sold and transferred by petitioner-appellee to Benson, Smith & Company, Limited. The policy, while agreeing to pay (in the event of the death of Rumsey) the sum of five thousand dollars

to Benson, Smith & Company, Limited, "or its legal representatives, or to such beneficiary as may have been duly designated, at the home office of the company in the City of New York," also contained a provision whereby the assured might change the beneficiary at any time during the continuance of the policy, "by written notice to the company at the home office, provided the policy is not then assigned." The policy never was assigned. "No designation, or change of beneficiary, * * * shall take effect until endorsed on this policy by the company at the home office." The physical possession of the policy has always been held by Benson, Smith & Company, whereby it became impossible for Rumsey to technically comply with the provision of the policy regarding a change of beneficiary. Rumsey, however, sometime before his death, formally notified the New York Life Insurance Company that he had changed the beneficiary by substituting his wife, the petitioner-appellee, for Benson, Smith & Company. The New York Life Insurance Company replied to this notice that this change could not be made except by the manual and physical delivery of the policy itself at the home office for the purpose of having such endorsement made thereon. A long correspondence occurred between Rumsey and his wife and Benson, Smith & Company, Limited, which manifests a difference of opinion between them as to their respective rights under the policy, Benson, Smith & Company insisting upon the right to be considered the sole owner of all beneficial interest therein and the Rumseys insisting that even though such beneficial interest had formerly existed in Benson, Smith & Company, Limited, it had ceased upon the cessation of the relationship between Rumsey and Benson, Smith & Company, Limited.

The circuit judge held that Benson, Smith & Company, Limited, had no insurable interest in the life of Rumsey;

"that this entire series of transactions constituted what, in law, are known as wagering contracts,—and that the real purpose of the corporation in taking out the insurance in question, when stripped of verbiage and euphonious diction, was merely to speculate upon the lives of the three principal stockholders in the corporation."

In our opinion this conclusion is not supported or warranted by the facts in the case, that is, the agreed statement of facts, the affidavits and depositions — the only facts before the trial judge and necessarily the only evidence upon which he could predicate a decision.

The purpose of the insurance was to protect the interests of Benson, Smith & Company, Limited, against a sudden demand for funds in the event of the death of any of the three men, they virtually owning the entire business; that also was Rumsey's understanding of the matter, and he regarded it as a perfectly legitimate business transaction and not that he was participating in a gambling scheme—nor was the contract in contravention of the rule of public policy against wager policies.

In *Grigsby* v. *Russell*, 222 U. S. 149, 154, the court says: "Of course the ground suggested for denying the validity of an assignment to a person having no interest in the life insured is the public policy that refuses to allow insurance to be taken out by such persons in the first place. A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end. * * * But when the question arises upon an assignment it is assumed that the objection to the insurance as a wager is out of the case. * * * This being so, not only does the objection to wagers disappear, but also the principle of public policy referred to. * * * The danger that might arise from a gen-

eral license to all to insure whom they like does not exist. Obviously it is a very different thing from granting such a general license, to allow the holder of a valid insurance upon his own life to transfer it to one whom he, the party most concerned, is not afraid to trust. * * * So far as reasonable safety permits it is desirable to give to life policies the ordinary characteristics of property."

If a man can assign a policy of life insurance to one having absolutely no interest in his life, it would be absurd to assert that a man may not insure his own life in favor of one who has no insurable interest in it. This conception of the position of the parties is fully sustained by the authorities. Cooley's Briefs on Insurance 252 and cases cited. If the policy was taken out by Rumsey for the benefit of Benson, Smith & Company, Limited, it to pay the premiums under an agreement between the three stockholders in said corporation, Smith, Rumsey and Gignoux, that each of the other stockholders, Smith and Gignoux, at the time take out similar policies, which they did, Rumsey would not afterwards be any more at liberty to change the beneficiary under said policy than he would have been to change an assignee to whom he had assigned a policy on his life for a valuable consideration.

From this view of the case, which is entirely compatible with the records, the decision of the trial judge cannot be sustained.

That the insurance was taken out by Benson, Smith & Company upon the life of Rumsey in consequence of the agreement entered into by Smith, Rumsey and Gignoux can also be substantiated by the record. If such was the case, and we are of the opinion that this was the fact, the great weight of modern authorities hold

that it, Benson, Smith & Company, Limited, did have an insurable interest in the life of the insured (Rumsey).

"An insurable interest exists whenever the relation between the assured and insured whether by blood, marriage *or commercial intercourse,* is such that the assured has a reasonable expectation of deriving benefit from the continuation of the life of the insured, *or of suffering detriment* or incurring liability through its termination." Vance on Insurance, p. 129.

"It may be said generally, however, that while the earlier cases show a disposition to restrict it to a clear, substantial, vested pecuniary interest, and to deny its applicability to a mere expectancy without any vested right, the tendency of modern decisions is to relax the stringency of the earlier cases, and to admit to the protection of the contract whatever act, event, or property bears such a relation to the person seeking insurance that it can be said with a *reasonable degree of probability to have a bearing upon his prospective pecuniary condition."* May on Insurance, Sec. 76.

"Where there are no ties of blood or marriage between the person whose life is insured and the person who procures the policy on such life there must be some pecuniary interest of the latter in the life of the former to sustain the insurance. *But an indirect advantage is sufficient,* and a moral obligation will support the policy. It is enough that *in the ordinary course of events pecuniary loss or disadvantage will naturally and probably result* from the death of the one whose life is insured to the person obtaining the policy." 25 Cyc. 706.

"Indeed, it may be said generally that *any reasonable expectation of pecuniary benefit* or advantage from the continued life of another creates an insurable interest in such life. * * * The essential thing is, that the policy shall be obtained in *good faith,* and not for the purpose of speculating upon the hazard of a life in which the insured has no interest." *Conn. M. L. Ins. Co.* v. *Schaefer,* 94 U. S. 457, 460.

"Although, as was said by Mr. Justice Field, in *War-*

*nock* v. *Davis*, 104 U. S. 775, it is not easy to define with precision what will constitute such an interest, it may be stated generally to exist whenever the relations between the insured and the beneficiary are such as to justify a reasonable expectation that the continuance of the life of the former will result in advantage or benefit to the latter. It is not necessary, in order to create such an interest, that the insured shall be under any *legal* obligation, either financial or otherwise, to the beneficiary. It is not even necessary that kinship shall exist between the parties. If the insured is under a *moral* obligation to render care and assistance to the beneficiary in the time of the latter's need, then the latter has an insurable interest, other than a mere pecuniary one, in the life of the former." *Thomas* v. *Nat. Ben. Assn.* 84 N. J. L. 281, 282.

"One not the wife, child, parent, brother, sister or creditor of insured may have an insurable interest in his life." *Kentucky Life & Acc. Ins. Co.* v. *Hamilton*, 63 Fed. 93.

The appellant, the New York Life Insurance Company, having paid the judgment rendered against it in favor of the beneficiary in said policy, Benson, Smith & Company, Limited, is absolved from any and all further liability under said policy.

The decree appealed from is reversed and the cause remanded to the circuit judge for such further action compatible to this decision as may be necessary.

*Andrews & Pittman* for petitioner.

*Thompson & Cathcart* for the insurance company.

*Robertson & Olson* for Benson, Smith & Co., Ltd.