Sue E. Wagner, As Executrix of Estate of Ferdinand F. Nellesen, Deceased, Appellant, v. National Engraving Company, Appellee.

Gen. No. 41,242.

Opinion filed December 23, 1940.

Lewis C. Coyner and Clinton A. Stafford, both of Chicago for appellant.

Oliver B. Opsahl, of Chicago, for appellee.

Mr. Justice Matchett delivered the opinion of the court.

Plaintiff appeals from a decree dismissing her complaint for want of equity. The cause was heard on exceptions to the report of a master, some of which were sustained, others overruled.

The facts in brief are that the decedent Nellesen on December 29, 1929, was the owner of one third of the stock of the defendant National Engraving Company, a corporation. Rudolph Engel and John Doerfler each owned one third of the total stock of 40 shares. They were the only stockholders, officers and directors of the corporation. No dividends were ever declared. The corporation was run and managed much as if it were a partnership. None of the three was paid any salary. At the end of the fiscal year the amount remaining on hand was divided equally among them. From 1929 onward, Doerfler acted as office manager, Engel as solicitor of business and Nellesen as superintendent of the shop and "Benday" man. Benday was the name for a process used in the business, and Nellesen was an expert in doing this kind of work. For the period from 1929 to 1935, inclusive, each of these three owners of the business annually drew out substantial amounts—the least $6,208.33, the largest $12,433.33.

December 21, 1929, at a meeting of the directors of the National Engraving Company, it was .proposed that an agreement be made between each of these three stockholders and the corporation to the effect that upon the death of any one of them his personal representative would be obligated to sell his stock to the corporation for $15,000. On that date three similar agreements (one with each of the stockholders) for such sale and purpose were put in writing, submitted to the parties and January 3, 1930, executed and delivered by them to the corporation. Each of the agree-

ments, in addition to providing for the sale and purchase of the stock of each holder, also provided that in order to provide the money for the corporation to pay for his stock each stockholder would take out two insurance policies on his life, one for $5,000 and one for $10,000, making the corporation the beneficiary. The contracts also provided that the corporation would pay the premium upon the policies taken out.

On the day the contract of the decedent was executed, he took out two policies, one for $5,000 and one for $10,000. The $10,000 policy provided for the payment of a double liability in case of accidental death. The master finds there was an oral agreement between the corporation and the decedent that this policy should contain this provision but it was not reduced to writing. He also finds the agreements, both oral and written, were made at a directors' meeting but that no resolution was drawn up.

Plaintiff argues oral evidence was not admissible to prove conversations or agreements which were not in the written contract between decedent and the corporation. She cites *Osgood v. Skinner,* 211 Ill. 229, 238, and *Victor Electric Co. v. Miller,* 199 Ill. App. 577. The cases are not applicable. The oral evidence was not in conflict with the written agreement but supplementary to it. *Charles Mulvey Mfg. Co. v. McKinney,* 184 Ill. App. 476.

The premiums on both insurance policies were paid by the corporation. Plaintiff's exceptions to a finding that the premiums were in fact paid by the decedent were sustained by the chancellor. Nellesen died July 11, 1936, from accidental drowning. The corporation collected the insurance on both policies, including the double liability, a total amount of $25,000. His executrix brings this action on the theory that the insurable interest of the defendant corporation in the life of Nellesen was not more than $15,000, and she is entitled to recover from defendant the $10,000 paid by

the insurance company for the double liability on account of his accidental death.

The insurable interest of a corporation under such circumstances is a question of fact, and the test is whether a pecuniary loss may be reasonably expected to result to the corporation from the death of the insured. This is a correct statement of the law as held in numerous cases. *Guardian Mut. Life Ins. Co. v. Hogan,* 80 Ill. 35; *Bruce v. Illinois Bankers Life Ass'n,* 207 Ill. App. 555, 558; *United Security Life Insurance & Trust Co. of Pennsylvania v. Brown,* 270 Pa. 270, 113 Atl. 446; *Warnock v. Davis,* 104 U. S. 775; *Colgrove v. Lowe,* 343 Ill. 360.

It is not denied that the burden of proof was upon plaintiff to show there was no reasonable expectation of any pecuniary loss to the corporation by reason of decedent's accidental death but plaintiff says the means of proof on this point was in possession of defendant; that the law will presume the fact did not exist unless such evidence to establish it is produced by the opposite party. She cites *Great Western R. Co. v. Bacon,* 30 Ill. 347, and *Curry v. Cotton,* 356 Ill. 538, to this point, and *Prentice v. Crane,* 234 Ill. 302, and *Welsh v. Shumway,* 232 Ill. 54, to the further point that slight evidence is sufficient under such circumstances to shift the burden of proof. We do not doubt the rules of law as stated in these decisions, and we also assume the correctness of plaintiff's legal theory, namely, that when insurance is payable to a beneficiary who has no insurable interest and the insurer pays the same without raising this defense, the beneficiary will hold the amount so paid as trustee for the estate of the insured. While the precise question has not been decided in this State, so far as we are aware, the courts of many States of other jurisdictions have so decided. *Warnock v. Davis,* 104 U. S. 775; *Strode v. Meyer Bros. Drug Co.,* 101 Mo. App. 627, 74 S. W. 379; *McRae v. Warmack,* 98 Ark. 52, 135 S. W. 807; *Exchange Bank*

*of Macon v. Loh,* 104 Ga. 446, 31 S. E. 459; *Hess v. Segenfelter,* 127 Ky. 348, 105 S. W. 476; *Lanouette v. Laplante,* 67 N. H. 118 (36 Atl. 981) and *Quinn v. Catholic Knights,* 99 Tenn. 80, 41 S. W. 343.

Notwithstanding, we are of the opinion that the decree in this cause is right and must be affirmed because, as we read the evidence, the finding of the master as approved by the chancellor that defendant in good faith believed at the time the insurance policies were taken out that pecuniary loss to this amount would result to it in case the decedent should die suddenly as the result of accident, is sustained. The question must be determined as of the date upon which the insurance was taken out. If within the meaning of the law, defendant had an insurable interest on that date, then the fact that at a later date the interest ceased would not invalidate the policy. *Rumsey v. New York Life Ins. Co.,* 25 Hawaii 141; *Sinclair Refining Co. v. Long,* 139 Kan. 632; *Home Title Ins. Co. v. United States,* 50 F. (2d) 107, 109; *Connecticut Mut. Life Ins. Co. v. Schaefer,* 94 U. S. 457; *Origsby v. Russell,* 222 U. S. 149; *Wellhouse v. United Paper Co.,* 29 F. (2d) 886; *Keckley v. Coshocton Glass Co.,* 86 Ohio St. 213, 99 N. E. 299; *West End Sav. Bank v. Goodwin,* 223 Ala. 185, 135 So. 161; *Reilly v. Pennsylvania Mut. Life Ins. Co. of Philadelphia,* 201 Iowa 555, 207 N. W. 583; *First-Columbus Nat. Bank v. D. S. Pate Lumber Co.,* 163 Miss. 691.

Evidence was introduced by plaintiff tending to show the mere fact that the death of the deceased was accidental did not result in pecuniary loss to the defendant corporation. This, if true, was not at all controlling. The insurable interest of defendant to the amount of $15,000 is not questioned. Manifestly it could not be, since if the corporation was to buy the stock it was necessary to provide the money with which to buy it. Looking at the matter upon the date the insurance policy was taken out, we think there was

much reason to provide the corporation with an additional $10,000 in order to meet exigencies which might reasonably be expected to arise from the sudden death of any one of the three persons who organized, were managing, controlling and developing the business. The purpose of insurance is to provide against contingencies. These cannot always be determined with mathematical accuracy. This provision for double liability in case of accidental death seems to have been well designed to provide the corporation against a pecuniary loss which under all circumstances might be reasonably anticipated to result from the accidental death of decedent.

The decree will be affirmed.

*Decree affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.