RYAN v. ANDREWSKI et al.

No. 34583.  March 25, 1952.

*242 P. 2d 448.*

Champion, Champion & Wallace, Ardmore, and Pierce, Rucker, Mock, Tabor & Duncan, Oklahoma City, for plaintiffs in error.

Champion, Fischl & Champion, Ardmore, for defendants in error.

GIBSON, J. The parties appeared in the trial court in the same order as they appear in this court and will generally be referred to as plaintiffs and defendants.

On August 20, 1947, Dan Ryan filed his petition in this action naming as defendants H. C. Andrewski, L. L. Robinson and the Prudential Insurance Company of America. He alleged a partnership between himself and the personal defendants and the issuance by the Prudential of ten separate insurance policies on his life, all payable to the partnership. He further alleged a dissolution of the partnership on February 29, 1944, and that due to an oversight no mention was made of the policies; that the insurable interest held by the partnership had terminated and although he had requested defendants to make a change, naming his wife as beneficiary, they had failed and refused so to do. He tendered the cash or loan value of the policies and prayed that the defendants be canceled as beneficiaries and that the Insurance Company be required to change the beneficiary as designated by him. On motion the petition was amended, naming the wives of the plaintiff and personal defendants as parties, it appearing that the wives were included as partners in the partnership agreement. Dan Ryan died October 14, 1948, and the action was revived with his widow, as executrix of his estate, named as a party plaintiff.

Issue was joined and the case tried to the court. The Insurance Company pleaded that it was a stakeholder and

paid the proceeds of the policies into court, and is not a party to this appeal. Judgment was rendered for defendants, and plaintiffs appeal.

On June 1, 1943, Dan Ryan, Jesse Willis Ryan, his wife, and the named defendants entered into a written partnership agreement to operate under the trade name "Oklahoma Distributing Company" to engage in the manufacture, sale and distribution of beer and other beverages, each partner acquiring an undivided one-sixth interest in all assets. The three husbands were named as managing partners. It was agreed that insurance on the life of each managing partner, in the sum of $50,000, should at all times be maintained and kept in force during the existence of such partnership, the premiums to be charged against the partnership. It was provided that a partner could terminate the partnership on specified notice, with the nonterminating partners having an option of purchase, for cash, and upon payment the partnership and assets should belong to those partners making the purchase, and further:

"Upon any sale as herein provided the nonpurchasers shall thereupon cease to have any interest in the partnership property or its assets, and shall not be liable for any of its unsatisfied obligations or liabilities."

Policies totaling $50,000 were purchased on the life of each of the three managing partners. In the application for Mr. Ryan's policies (ten in number, each for $5,000), Dan I. Ryan was named as "Proposed Insured", Oklahoma Distributing Company was "Applicant", and the beneficiary was named "Oklahoma Distributing Company of Ardmore, Oklahoma, a partnership, as such partnership now exists or may hereafter be constituted."

Attached to each policy was the following endorsement:

"Provisions as to Ownership a n d Control of the Policy

"Subject to such limitations, if any, as may be hereinafter set forth, all legal incidents of ownership and control of the Policy, including any and all benefits, values, rights and options conferred upon the Insured by the Policy or allowed by the Company and any ultimate interest as beneficiary conferred upon the Insured or the Insured's estate by the Policy, shall belong to the following Owner: Oklahoma Distributing Co. of Ardmore, Okla., a partnership, as such partnership now exists or may hereafter be constituted."

Thereafter the Company assigned all of the policies to Schlitz Brewing Company as collateral security for a loan of $100,000 payable in monthly payments.

About nine months after its organization and on February 29, 1944, Ryan and wife withdrew from the partnership and elected to sell their interests to the other partners for cash, as provided in the partnership agreement.

A new agreement on dissolution was executed by all partners. Among other things, it provided that the partnership was dissolved by mutual agreement; that each of the four remaining partners was to receive an undivided 1/4th interest "in and to all of the business assets and properties, real, personal and/or mixed, including accounts receivable and cash on hand remaining after the distribution of cash herein distributed to Dan Ryan and Jesse Willis Ryan"; that each of the Ryans was to receive in cash out of partnership assets an amount equal to 1/6th of the total net worth of the partnership at the time of its dissolution. Further, that the distributions so made were in full liquidation of said partnership, and the remaining four partners agreed to hold the Ryans harmless from any and all damage and liability occasioned on account of any partnership obligations.

The books were audited by a certified public accountant and on his determination of the total net worth of the partnership Ryan and his wife were paid the sum of $65,118.04 for their 2/6ths interest in the enterprise.

The insurance policies were not specifically mentioned in the dissolution agreement. Some time later Mr. Ryan became ill. He began a series of requests or demands upon the Insurance Company and his former partners, contending that the Distributing Company as it then existed did not own the policy and requesting that the policies be returned and that his wife be named beneficiary. These negotiations were fruitless, and more than three years after dissolution of the partnership Mr. Ryan filed this action.

Plaintiffs contend that the judgment is not supported by the evidence and is contrary to law. It is said that the policies were not disposed of in the written agreement of dissolution and that each partner was entitled to his pro-rata share of the undisposed assets, and that after the dissolution the resultant partnership had no insurable interest. The argument overlooks the provision of the dissolution agreement wherein there was distributed to the four remaining partners "all of the business assets and properties, real, personal and/or mixed . . . after the distribution of the cash herein distributed to Dan Ryan and Jesse Willis Ryan etc.", and it overlooks the designated beneficiary which was the Distributing Company "as such partnership now exists or may hereafter be constituted." The accountant who made the audit, upon which the distribution of assets was based, did not list the policies as assets because, at that time, they had no cash value, but throughout the existence of the partnership the partners treated all policies as a business asset and property, and they had used the same to obtain a large loan for partnership use, which loan had not been repaid at the time of the dissolution. As a part of the agreement that obligation was assumed by the remaining partners and plaintiffs were held harmless from liability thereon. The premiums had been paid by the partnership and the sole beneficiary was the partnership.

Miller v. Hall, 65 Cal. A. 2d 200, 150 P. 2d 287, cited by defendants, is not in point, by reason of the difference in facts from those of the instant case, including the designation of beneficiary. The case does hold that since the premiums were paid by the partnership the interest of the parties in the policies became partnership assets.

Defendants say that a beneficiary irrevocably designated as such in a life policy has a vested right not subject to change at the insured's hand. In making this contention defendant is supported by the great weight of authority.

"It is held by the great weight of authority that the interest of a designated beneficiary in an ordinary life policy vests upon the execution and delivery thereof, and, unless the same contains a provision authorizing a change of beneficiary without the consent thereof, the insured cannot make such change." Condon v. New York Life Ins. Co. of New York, 188 Iowa 658, 166 N. W. 452.

The opinion cites many cases from various jurisdictions in support of the rule announced.

See, also, Page v. Detroit Life Ins. Co., 11 Tenn. App. 417; Ruckenstein v. Metropolitan Life Ins. Co., 263 N. Y. 204, 188 N. E. 650.

At the time of the dissolution agreement all policies were pledged with Schlitz Brewing Company to secure the partnership loan, and there was an unpaid balance of $70,000 on that debt.

"Where partner contracted with his copartner that he should be beneficiary of partner's life policy, partner's attempt to change beneficiary after dissolution of partnership when partner owed money to copartner *held* ineffective (Rev. St. 1925, art. 5048)." Smith v. Schoellkopf (Tex. Civ. App.) 68 S. W. 2d 346.

While admitting that the partnership had an insurable interest in the life of Mr. Ryan, at the time the policies were written, plaintiffs say that there is no insurable interest possessed by

the partnership which continued after the dissolution.

"An insurer is the only party who can raise question of insurable interest, and if insurer waives question of interest and pays money to named beneficiary, or into court, neither personal representative nor creditors can claim proceeds on grounds of beneficiary's lack of insurable interest. St. 1935, p. 636, sec. 10110." Jenkins v. Hill, 35 Cal. A. 2d 521, 96 P. 2d 168.

Defendants say that a valid designation of a beneficiary remains so after the latter's insurable interest or relationship ceases, or, otherwise stated, insurable interest of the beneficiary of a life policy at the time of the death of the insured is immaterial, if it existed when the policy was issued. In support of this contention defendants cite Sinclair Refining Co. v. Long, 139 Kan. 632, 32 P. 2d 464, which was a case in many respects similar to the present one. In the opinion the Kansas Supreme Court said:

". . . As applied to the situation here presented, the authorities generally are, and the recent ones practically ·unanimous, that the policy is not a mere contract of indemnity, but is a contract to pay to the beneficiary a certain sum in the event of the death of the insured. The authorities are practically unanimous also in support of the rule that where the insurable interest exists when the policy is issued, and a valid contract of insurance is then effected, it is not defeated by the cessation of the insurable interest unless the terms of the policy so provide. We quote from some of the leading authorities on this question:

"In Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 59, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863, it was held: 'A valid policy (of insurance) is not avoided by the cessation of the insurable interest, even as against the insurer, unless so provided by the policy itself.'

"In Conn. Mut. Life Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251, it was held: 'A policy of life insurance originally valid does not cease to be so by the cessation of the assured's party's interest in the life insured, unless such be the necessary effect of the provisions of the instrument itself.'

"In Wurzburg v. N. Y. Life Ins. Co., 140 Tenn. 59, 203 S. W. 332, L. R. A. 1918E, 566, it was held: 'A manufacturing company has an insurable interest in the life of its manager, who is its guiding spirit and is largely carrying on its business. Where a manufacturing company took out a valid policy on the life of its general manager, who later severed his connection with the company, and it paid all premiums until his death, it was entitled to the whole of the insurance.'"

We need not lengthen this opinion with the many additional citations, but we observe that defendants' above proposition is sustained by the great weight of authority.

These involved insurance policies were business policies purchased for the protection of the partnership, and were designed to enchance the growth and success of the partnership undertaking. The designation of the beneficiary was an irrevocable designation. All partners then intended, just as set out in the provision of the policies, that all legal incidents of ownership and control of their respective policies and all benefits and rights conferred on the insured by the policies should belong to the Oklahoma Distributing Company as it then existed or as it might thereafter be constituted. The use of the policies for partnership purposes was intended from the day the partnership agreement was executed. Their continued use as collateral for the Schlitz Company loan until that debt was paid was contemplated by all parties when the dissolution agreement was signed,—an obligation which the remaining partners assumed while the plaintiffs were to be released therefrom. At that time the obligation was in excess of the total amount of Mr. Ryan's policies. It was then contemplated by the parties that the continuing partnership, of the four remaining partners, would meet that obligation. There is nothing in the record to indicate that the parties intended that as soon as the four remain-

ing partners used their own money to pay off the Schlitz indebtedness they would turn the policies over to Mr. Ryan or that he was to receive any further benefit from them. In all these transactions the insurance policies were treated as partnership property.

Under the dissolution agreement Ryan and wife were paid cash for their interests in the partnership as specified in the partnership agreement in the event of a withdrawal of any partner. After use of the cash needed to pay them, "all of the business assets and properties, real personal and mixed" were assigned to the four remaining partners. Ryan and wife joined in this assignment. None of the assets were itemized or given specific mention. The insurance policies of all partners were and had been treated as *business* assets. In the audit upon which the amounts due to Ryan and wife were computed, the prepaid premiums were listed as assets. Thus Ryan and wife were reimbursed for their pro-rata share of premiums theretofore paid and withheld from all partners during the operation of the business. It cannot be said that the failure to mention the policies in the agreement was due to an oversight since the same thing could be said of any other assets. None was given specific mention. The parties intended the assignment to cover *all* assets remaining after the cash payment, and so said.

Plaintiffs contend that the court erred in refusing to permit Mrs. Ryan to testify as to her understanding as to the taking out of the insurance policies. Following the court's ruling the plaintiffs tendered the following written offer of proof:

"Plaintiff's Tender in Connection with Testimony of Jesse Willis Ryan, Wife of Deceased.

"2. That Mrs. Ryan, wife of deceased, if permitted to testify would testify that it was her understanding as a partner that the insurance was only to be carried on Dan Ryan's life during the existence of the Partnership."

To avoid the rule against use of parol evidence to vary the terms of a written agreement, plaintiffs contend that parol evidence was admissible to show that the written agreement was not intended to cover the subject of the policies, and cite 32 C. J. S. 1027, and numerous cases dealing with the admission of evidence to show the intent of the parties where the written instrument is ambiguous. We do not find ambiguity in the contract. As heretofore stated the parties were disposing of business assets and they had treated the policies as business assets. The offer was in conflict with the rule against admission of parol evidence to vary the terms of a written contract.

Defendants also contend that there was error in the refusal of evidence that the omission of provision for disposition of the insurance policies was because of a mutual mistake of the parties. Mrs. Ryan was permitted to testify that the insurance policies were not mentioned or considered in the negotiations of settlement. There was no evidence of a mutual mistake of fact and no offer of evidence to establish a mutuality of mistake. There was no plea for reformation of the settlement contract because of a mutual mistake. The trial court did not err in refusing to admit the suggested testimony.

Affirmed.