## SECOR v. PIONEER FOUNDRY COMPANY, INC.

1. INSURANCE—INSURABLE INTEREST—DEFENSE—STANDING.
     Only an insurer may assert that a life insurance beneficiary did not have an insurable interest in an insured life.

2. INSURANCE—INSURABLE INTEREST—PAYMENT—THIRD PERSONS.
     A third person is not entitled to raise the issue of lack of insurable interest when an insurer, who alone may complain of a beneficiary's lack of insurable interest in an insured life, pays the policy proceeds to that beneficiary.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 43 Am Jur 2d, Insurance § 464.
[3] 43 Am Jur 2d, Insurance §§ 1, 3.
[4–6, 8, 9] 43 Am Jur 2d, Insurance § 517 et seq.
[7] 43 Am Jur 2d, Insurance § 1 et seq.

3. INSURANCE—LIFE INSURANCE—INDEMNIFICATION—INVESTMENT.

A purchaser of ordinary life insurance buys not only indemnification in a specific amount against a particular peril or potential loss but also makes an investment.

4. INSURANCE—LIFE INSURANCE—INSURABLE INTEREST—TERMINATION.

To terminate the rights of an owner or beneficiary of ordinary life insurance because the insurable interest has terminated, perhaps after many years of paying premiums and when the insured's death is bound to be more imminent than it was when that policy was issued, would not only adversely affect the investment quality of life insurance but also would confer an unanticipated and unwarranted windfall upon the insurer.

5. INSURANCE—LIFE INSURANCE—INSURABLE INTEREST—TERMINATION.

A beneficiary who has an insurable interest in an insured when a life insurance policy is issued is entitled to the insurance proceeds regardless of whether that insurable interest existed at the time of the insured's death.

6. INSURANCE—LIFE INSURANCE—EMPLOYER-BENEFICIARY—TERMINATION OF EMPLOYMENT.

An employer who is the beneficiary of a policy insuring an employee's life may collect the policy proceeds even though that employee's death occurred after his employment was terminated.

7. INSURANCE—LIFE INSURANCE—FUNCTION—PURPOSE.

The primary function of life insurance is monetary, not the assuagement of grief, and whether the beneficiary is a widow or a business, the fundamental purpose of that insurance is to replace with a sum of money the earning capacity of the life insured.

8. INSURANCE—LIFE INSURANCE—EMPLOYMENT—TERMINATION—EMPLOYER.

An employer who owns an insurance policy on an employee's life is not obliged to offer to sell that policy to that employee upon termination of his employment unless the obligation has been assumed by contract.

9. INSURANCE—LIFE INSURANCE—KEYMAN—EMPLOYER.

Defendant employer, as owner-beneficiary of a keyman insurance policy on the life of plaintiff's decedent, was entitled to the policy proceeds even though the employment relationship had terminated before the insured's death.

Appeal from Jackson, Robert W. McIntyre, J., presiding. Submitted Division 2 March 5, 1969, at Lansing. (Docket No. 5,898.) Decided October 30, 1969.

Complaint by Florence Secor, for herself and as administratrix of the estate ·of Jack A. Secor, deceased, against Pioneer Foundry Company, Inc., to recover the proceeds of a life insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Florence N. Clement* (*Gay S. Hardy,* of counsel), for plaintiff.

*Felix F. Best,* for defendant.

Before: J. H. GILLIS, P. J., and LEVIN and BRONSON, JJ.

LEVIN, J. Plaintiff is the widow of Jack A. Secor and the administratrix of his estate. She commenced this action to recover the proceeds of an ordinary life· insurance policy on his life which were paid to his former employer, defendant Pioneer Foundry Company, Inc. The trial court entered a judgment of no cause of action and the plaintiff appeals. We affirm.

Pioneer Foundry employed Secor for a period of 9 years, 1954 to July, 1963. In March, 1960, Pioneer Foundry obtained a $50,000 policy on his life; it was the applicant, the owner and the beneficiary, and it paid the premiums on the policy. After the employment relationship terminated in July, 1963, Pioneer Foundry paid the March, 1964 annual premium. Secor died the following month.

Plaintiff argues that after the termination of Secor's employment Pioneer Foundry lost whatever insurable interest it had in Secor's life and that a constructive trust should be impressed on the proceeds in favor of Secor's widow and estate.

A preliminary issue—whether the plaintiff has standing to complain—is dispositive of plaintiff's contention that Pioneer Foundry no longer had an insurable interest after Secor left its employ. In *Hicks* v. *Cary* (1952), 332 Mich 606, on facts similar to those before us, the Michigan Supreme Court declared that the insurer alone may assert that the beneficiary of a life policy does not have an insurable interest (p 612):

"We hold to the rule that lack in the beneficiary of an insurable interest equal to the full amount of the insurance policy, to the extent that it thereby renders the policy a wagering contract, constitutes a barrier to the beneficiary's right to receive and retain the full amount of the insurance proceeds, but that it *is one which may be raised by and for the benefit of the insurer alone.*" (Emphasis supplied.)

*Hicks* relied on the Court's earlier decisions in *Standard Life & Accident Insurance Co.* v. *Catlin* (1895), 106 Mich 138, and *Smith* v. *Pinch* (1890), 80 Mich 332, which enunciate fundamentally the same rule of law. The rule that only the insurer can raise the question of lack of insurable interest appears to be well supported in other jurisdictions.[1]

In the present case, the insurer, who alone had standing to complain of any lack of insurable interest, paid the proceeds of the policy to Pioneer Foundry in May, 1964, without asserting this possible defense.

---

[1] See 3 Couch on Insurance (2d ed), § 24.6, p 75; 2 Appleman, Insurance Law & Practice, § 765, p 130; Vance on Insurance (3d ed), § 31, p 199.

The plaintiff argues that, apart from whether she has standing to raise the insurable interest defense, the underlying premise of the insurable interest requirement—the public policy against speculation on the life of another[2]—is so pervasive that Pioneer Foundry could not lawfully retain insurance on Secor's life after the termination of his employment or, alternatively, beyond the date that the first premium became due after his employment terminated. Although this argument so closely parallels the insurable interest argument that it too could be rejected on the authority of *Hicks* v. *Cary, supra,* we prefer to meet this argument on the merits.

The purchaser of ordinary life insurance, as distinguished from casualty or property insurance, buys not only indemnification in a specific amount against a particular peril or potential loss but also makes an investment.[3] To terminate the rights of the owner or beneficiary of ordinary life insurance because the relationship to the life insured has changed, perhaps after many years of making premium payments, at a time when death is bound to be more imminent than it was at the time the policy was issued, would not only adversely affect this investment quality of life insurance but would also confer an unanticipated and unwarranted windfall on the insurer.

In recognition of these considerations the almost universal rule of law in this country is that if the insurable interest requirement is satisfied at the time the policy is issued, the proceeds of the policy

---

[2] See *Sun Life Assurance Company of Canada* v. *Allen* (1935), 270 Mich 272.

[3] "[L]ife insurance has become in our days one of the best recognized forms of investment and self-compelled saving. So far as reasonable safety permits, it is desirable to give to life policies the ordinary characteristics of property." *Grigsby* v. *Russell* (1911), 222 US 149 (32 S Ct 58, 56 L Ed 133).

must be paid upon the death of the life insured without regard to whether the beneficiary has an insurable interest at the time of death.[4] It has, accordingly, been held that an employer who is the beneficiary of a policy insuring the life of one of his employees may collect proceeds which become payable under the policy even though the employee's death occurs after the termination of his employment.[5]

The ordinary life insurance policy issued to the defendant corporation is referred to in the insurance industry as "keyman" life insurance. The plaintiff emphasizes that the typical life insurance policy is purchased to provide for loss by family members who may be expected to suffer a personal as well as a financial loss upon the death of the life insured. From this she argues that keyman life insurance should not be governed by the same rules as apply to life insurance generally. The proffered distinction is not, in our opinion, meaningful. Life insurance is not meant to assuage grief; its primary function is monetary. It serves fundamentally the same purpose whether the beneficiary is a widow or a business; it seeks to replace with a sum of money the earning capacity of the life insured.

---

[4] 43 Am Jur 2d, Insurance, § 504, p 535; 3 Couch on Insurance (2d ed), § 24.122, p 230; 2 Appleman, Insurance Law & Practice, § 763, p 123; Vance on Insurance (3d ed), § 31, p 185; *Mutual Aid Union* v. *White* (1924), 166 Ark 467 (267 SW 137); *Wagner* v. *National Engraving Co.* (1940), 307 Ill App 509 (30 NE2d 750); *Wellhouse* v. *United Paper Co.* (CA 5, 1929), 29 F2d 886.

[5] 43 Am Jur 2d, Insurance, § 504, p 536; 3 Couch on Insurance (2d ed), § 24.148, pp 262, 263; 2 Appleman, Insurance Law & Practice, § 872, p 398; Vance on Insurance (3d ed), § 31, p 187; *Wurzburg* v. *New York Life Ins. Co.* (1918), 140 Tenn 59 (203 SW 332, LRA1918E 566).

The holding in the 1908 case of *Victor* v. *Louise Cotton Mills* (1908), 148 NC 107 (61 SE 648), that payment of policy premiums after the insured life leaves the employ of a corporate employer is *ultra vires* does not reach the question of whether, if such payment is, nevertheless, made, the corporation or the family of the life insured shall receive the proceeds upon death.

The plaintiff's analogy to the public policy against a murderer collecting insurance on the life of the victim is inapposite. Pioneer Foundry's act of paying the yearly premium after Secor left its employ is not (contrary to plaintiff's argument) at all analogous to murdering him.[6] Given the general rule that the beneficiary of a life policy may collect its proceeds although the insurable interest which existed when the policy was issued subsequently terminates, it would make no sense to hold that the act of paying the premium (necessary to the full preservation of the owner's rights under the policy) somehow or other brings about a termination of the owner-beneficiary's rights.[7]

We also decline to limit Pioneer Foundry's recovery to the amount of its investment in the policy and its financial loss (probably nil) upon Secor's death.[8] Pioneer Foundry's investment in the policy was large both quantitatively and relatively.[9] It chose to make the premium payment due eight months after Secor's employment terminated to

---

[6] Cases concerning the disqualification of a murderer include *Ohio State Life Ins. Co.* v. *Barron* (1935), 274 Mich 22 and *Budwit* v. *Herr* (1954), 339 Mich 265.

[7] The argument that an employer should not be allowed to keep in force a policy on the life of a former employee so as to discourage the employer from murdering the employee is based on the imaginative assumptions that there is a significant risk that employers owning life insurance on the lives of former employees will seek to bring about their untimely death, and that if we were to adopt the rule plaintiff espouses an employer disposed to murder, aware of our decision and, therefore, knowing that he could not profit by murdering the employee after termination of his employment, would (although, in this hypothesis, he is willing to commit murder after employment terminates) refrain from murdering the employee before termination of employment. We know of no evidence which would support these suppositions, all of which appear to be without substance.

[8] *Cf. Wagner* v. *National Engraving Co.* (1940), 307 Ill App 509 (30 NE2d 750).

[9] The annual premium was high, $5,625, because of Secor's unfavorable medical history. Pioneer Foundry had thus paid the insurer over $22,000 before Secor left its employ and over $28,000 before he died.

preserve recovery of its prior expenditures.[10]   It did this in its own interest; it has not been suggested that it was acting for, or because of any obligation it had assumed to, Secor or his family.

There are, indeed, cases that hold that a creditor who acquires insurance on his debtor's life may not recover more than the amount of the debt and the premiums he pays.[11]   These cases appear to be based upon a misapplication of principles developed where the debtor pledges a policy with the creditor or pays the premiums and upon the concept that a creditor should never be able to recover more than the amount owing to him plus the cost of preserving and securing repayment.[12]   This analysis has been rejected in the better-reasoned cases;[13] it is contrary to the principle that the termination of an insurable interest does not affect the rights of an owner-beneficiary in a life policy.   A creditor who himself buys and pays for a policy on his debtor's life is, after the debt is paid, in fundamentally the same

10 *Cf. McMullen* v. *St. Lucie County Bank* (1937), 128 Fla 745 (175 So 721).

11 See *Morrow* v. *National Life Association of Des Moines, Iowa* (1914), 184 Mo App 308 (168 SW 881); *Dunn* v. *Second National Bank of Houston* (1938, 131 Tex 198 (113 SW2d 165). Generally, see 43 Am Jur 2d, Insurance, § 519, p 546; Anno: Rights in respect of proceeds of life insurance under policy naming creditor as beneficiary, 115 ALR 741; 2 Appleman, Insurance Law & Practice, ch 52; 3 Couch on Insurance (2d ed), § 24.154, p 266, 267.

12 *Albrent* v. *Spencer* (1957), 275 Wis 127 (81 NW2d 555); *Hayward* v. *Campbell* (1938), 174 Md 540 (199 A 530).

13 *Amick* v. *Butler* (1887), 111 Ind 578 (12 NE 518); *Rittler* v. *Smith* (1889), 70 Md 261 (16 A 890); see Vance on Insurance (3d ed), § 31, p 187. See, also, *Mutual Aid Union* v. *White, supra.* Compare *American Casualty Company* v. *Rose* (CA 10, 1964), 340 F2d 469, with *Forster* v. *Franklin Life Insurance Company* (1957), 135 Colo 383 (311 P2d 700), and *Zolintakis* v. *Orfanos* (CA 10, 1941), 119 F2d 571, which make the matter turn on the intention of the parties at the time of acquisition by the beneficiary of his interest in the policy; in these cases the beneficiary generally was a creditor of the life insured but asserted that his acquisition of the policy was due to a familial or other relationship and not because of his interest as a creditor, or that his interest in the policy was not intended to be limited to his creditor interest.

position as any other purchaser of a life insurance policy whose insurable interest has terminated. Our Supreme Court intimated in *Hicks* v. *Cary, supra,* p 611, that it would so hold if confronted with the question.

We can understand plaintiff's feeling that it is unseemly for Pioneer Foundry to continue to own insurance on Secor's life after the termination of his employment and that since the plaintiff, not Pioneer Foundry, suffered a financial as well as a personal loss upon Secor's death the plaintiff has a greater moral right to the proceeds or at least to so much of the proceeds as exceeds the cost of the insurance. It has been suggested that upon the termination of employment an employer owning insurance should give the employee an opportunity to purchase it.[14] Many employers, no doubt, are just as anxious to sell as the employee is to purchase the policy. We are not aware, however, of any principle of law, apart from an obligation assumed under a contract, which obliges an employer owning a policy on the life of an employee to offer to sell the policy to the employee upon termination of his employment. Having in mind the regularity with which insurance is now being purchased by businesses on the lives

---

[14] The suggestions made in "A proposed extension of the insurable interest requirement for keyman insurance," 65 Yale L J 736 (1956), cited by the plaintiff, do not appear to have been adopted.

Somewhat analogous is the problem which arises when a partnership is terminated. In one case the court directed payment of the proceeds to the family of the insured life, *Ruth* v. *Flynn* (1914), 26 Colo App 171 (142 P 194). It is one thing to direct payment of the proceeds to an insured partner's family; it would be quite another to direct payment of the proceeds to the family of a former employee who, unlike a partner, had no interest in the assets of his former employer. *Cf. Wellhouse* v. *United Paper Co., supra.* In *Ryan* v. *Andrewski* (1952), 206 Okla 199 (242 P2d 448), a former partner, who had already settled with the partnership, failed in an attempt to require the partnership to sell him policies on his life for the "cash or loan value." See, also, *Atkins* v. *Cotter* (1920), 145 Ark 326 (224 SW 624).

of employees, this might be an appropriate subject for legislation.

Affirmed.  Costs to defendant.

All concurred.