LOIS M. RYAN, EXECUTRIX OF THE ESTATE OF
EUGENE RYAN, DECEASED, APPELLANT, V.
GERALD L. TICKLE, APPELLEE.

316 N.W.2d 580

Filed February 26, 1982.   No. 43575.

Schneider & Nisley, P.C., for appellant.

Murphy, Pederson, Piccolo & Anderson for appellee.

Heard before BOSLAUGH, CLINTON, BRODKEY, and WHITE, JJ., and HOWARD, District Judge.

BRODKEY, J., Retired.

Lois M. Ryan, the plaintiff and appellant herein, is the widow of Eugene Ryan and the executrix of his estate. She commenced this action to recover the proceeds of a life insurance policy which were paid to the decedent's former business partner, appellee Gerald L. Tickle. After a trial in the District Court of Lincoln County, Nebraska, the appellee demurred to the evidence presented by the appellant and moved to dismiss appellant's petition. In its judgment entered on June 4, 1980, the trial court sustained the appellee's motions and dismissed the appellant's petition with prejudice. We affirm.

The facts as revealed in the record disclose that the decedent, Eugene Ryan, was a licensed mortician doing business in North Platte as the manager and president of Ryan Funeral Home, Inc. Tickle was licensed as a mortician doing business in Arnold, Nebraska, as owner of the Quig-Tickle Funeral Home. It appears that the two men had known each other since 1964, and in October 1971 they went into business together. The Ryan Funeral Home, Inc., had 477 outstanding shares of stock distributed among 12 shareholders. Ryan owned 50 shares of the company and Tickle purchased 25 shares. The two men also obtained an option to pur-

chase the remaining outstanding stock in the Ryan Funeral Home from the other shareholders. The 5-year option was to expire on September 2, 1976, and granted Ryan and Tickle, or the survivor of them, the right to exercise the option.

In March 1972 Ryan and Tickle were offered an opportunity to purchase the Mullen Funeral Home located in nearby Mullen, Nebraska. They purchased the funeral home together for $20,000, as equal partners. They borrowed $7,000 for the downpayment and arranged to finance the balance over a period of 5 to 6 years.

Shortly after the purchase of the Mullen Funeral Home, Ryan and Tickle decided to purchase life insurance policies on each other's lives, their ultimate business goal being to acquire ownership of the Ryan and Mullen funeral homes and to provide a fund by which the survivor could purchase the homes upon the death of one of the partners. It was their estimate that if one died, the survivor would need $20,000 to $25,000 to purchase the other's interest in the Mullen Funeral Home and an additional $75,000 to purchase the outstanding stock of the Ryan Funeral Home from the owners thereof under the option agreement.

Ryan and Tickle thereupon purchased decreasing term life insurance policies on their joint lives in the total amount of $100,000. Tickle was designated the owner of one policy which had a face value of $50,000, and Ryan was designated the owner of a second policy, also valued at $50,000. Both policies insured the joint lives of Ryan and Tickle so that the entire proceeds were payable to the survivor of them. The premiums for the insurance were paid by an automatic bank withdrawal arrangement through a partnership bank account maintained for the Mullen Funeral Home.

In early 1973 it was discovered that Ryan had cancer from which he subsequently died on October 25, 1975. Following Ryan's death, Tickle collected a total of $88,000 as the beneficiary of the two life insurance

policies. On September 22, 1976, Tickle and the appellant entered into a settlement agreement in which Tickle purchased the decedent's interest in the Mullen Funeral Home for the sum of $15,000. In addition, Tickle agreed to pay an additional $3,000 to the appellant in full and complete distribution of any sum of money claimed to be distributable to the decedent as undistributed earnings from the Mullen partnership. Tickle also agreed to assume and pay the unpaid balance due on the Mullen Funeral Home in the amount of $9,000. He also purchased all the assets of the Ryan Funeral Home from the board of directors and shareholders of the corporation for the sum of $147,000.

On November 7, 1977, the appellant, as executrix of the estate of Eugene Ryan, instituted this action alleging that the estate was entitled to all insurance proceeds paid upon the death of the decedent. In her brief on appeal to this court, appellant makes two principal arguments, to wit: That Tickle did not have an insurable interest in the life of the deceased, Eugene Ryan, and hence was not entitled to receive the proceeds of the insurance policies as the surviving partner of the deceased; and that the proceeds paid under the insurance agreement on decedent's life exceeded by $73,000 the amount of decedent's insurable interest in the Mullen Funeral Home, thus creating a wagering contract which is void as against public policy.

We note at the outset that the evidence in the record clearly indicates that the agreement between the partners had a dual purpose: not only to acquire for the survivor the Mullen Funeral Home but also to acquire the outstanding shares of stock in Ryan Funeral Home, Inc. The trial court found, and we conclude that the record sustains such finding, that the parties made a good faith estimate that the amount of money necessary to accomplish both such purposes would be approximately $100,000. That being so, appellee argues that the insurance contract was not a "wagering" contract but, rather, was a valid and enforceable contract of in-

surance. Also, with regard to appellant's contention that appellee did not have an insurable interest in the life of the decedent, appellee points out that the term "insurable interest" is defined in Neb. Rev. Stat. § 44-103(13) (Reissue 1978) as follows: "Insurable interest, in the matter of life and health insurance, exists when the beneficiary because of relationship, either pecuniary or from ties of blood or marriage, has reason to expect some benefit from the continuance of the life of the insured." In view of their avowed purpose in obtaining the insurance in question, in addition to the fact that evidence in the record discloses income tax returns showing increased profits from the operation of the funeral homes since the association of the parties as partners, appellee argues that there was clearly an expectation of benefit from the continuance of the life of the insured, and that therefore Tickle had an "insurable interest" in the life of the decedent Ryan.

We conclude, however, that we need not, and indeed may not, decide these issues, for the reason that the appellant herein has no standing or right to bring this lawsuit.

The law is well established throughout the country that only the insurer can raise the objection of want of an insurable interest. "The question of the lack of insurable interest in a life insurance policy may be raised only by the insurance company, and, where the company recognizes the validity of the policy, as by paying the amount thereof to the person named therein or into court, ordinarily adverse claimants to the fund may not raise the objection of lack of insurable interest." 44 C.J.S. *Insurance* § 212 at 915 (1945). See, also, *Poland v. Fisher' Estate*, 329 S.W.2d 768 (Mo. 1959); *Ryan v. Andrewski*, 206 Okla. 199, 242 P.2d 448 (1952); *Edgington v. Equitable L. Assur. Soc.*, 236 Iowa 903, 20 N.W.2d 411 (1945). "The heirs of the insured have no cause of action against the insurer upon a policy the proceeds of which have been paid by the insurer to a third person who was the beneficiary designated in the policy,

on the ground that the insurer could have refused to make the payment for want of an insurable interest on the part of the beneficiary." 3 Couch on Insurance 2d, Insurable Interest § 24:6 at 76 (1960).

The above-cited authorities make it clear that only an insurer has standing to complain of a lack of insurable interest and that the heirs of the insured may not proceed on such cause of action against the designated beneficiary. This position was recently discussed in an excellent opinion by the Michigan Court of Appeals in *Secor v. Pioneer Foundry*, 20 Mich. App. 30, 173 N.W.2d 780 (1969). In that case Pioneer Foundry obtained a $50,000 life insurance policy on Secor, who was a 9-year employee of the company. Three years later Secor terminated his employment; however, the company paid the 1964 policy premium 8 months after Secor had terminated his employment. Secor died a month later, and the company collected the proceeds of the insurance. Secor's widow filed suit, alleging that Pioneer Foundry had no insurable interest in Secor's life and sought a constructive trust to be imposed in favor of Secor's estate. The trial court dismissed Mrs. Secor's suit.

On appeal, the Michigan court, citing *Hicks v. Cary*, 332 Mich. 606, 52 N.W.2d 351 (1952), held: "'We hold to the rule that lack in the beneficiary of an insurable interest equal to the full amount of the insurance policy, to the extent that it thereby renders the policy a wagering contract, constitutes a barrier to the beneficiary's right to receive and retain the full amount of the insurance proceeds, but that *it is one which may be raised by and for the benefit of the insurer alone.*'" *Id.* at 33, 173 N.W.2d at 781. The court concluded that it was the insurer alone who had standing to complain of a lack of insurable interest and noted that the insurance company had paid the proceeds of the policy to Pioneer Foundry without raising the issue. The court affirmed the dismissal of the plaintiff's action, based on a lack of standing to complain.

In *Secor* the court at 33, 173 N.W.2d at 782, stated: "The rule that only the insurer can raise the question of lack of insurable interest appears to be well supported in other jurisdictions," and cites in support thereof, 3 Couch on Insurance, *supra;* 2 Appleman, Insurance Law & Practice § 765 (1966); Vance on Insurance § 31 at 199 (3d ed. 1951). In the opinion, the court at 34, 173 N.W.2d at 782, states: "In recognition of these considerations the almost universal rule of law in this country is that if the insurable interest requirement is satisfied at the time the policy is issued, the proceeds of the policy must be paid upon the death of the life insured without regard to whether the beneficiary has an insurable interest at the time of death." The court in *Secor* also recognized that there are cases that hold that a creditor who acquires insurance on his debtor's life may not recover more than the amount of the debt and the premiums he paid. In this connection, however, the court at 37, 173 N.W.2d at 784, stated: "This analysis has been rejected in the better-reasoned cases; it is contrary to the principle that the termination of an insurable interest does not affect the rights of an owner-beneficiary in a life policy." The court also noted at 35, 173 N.W.2d at 783: "Life insurance is not meant to assuage grief; its primary function is monetary. It serves fundamentally the same purpose whether the beneficiary is a widow or a business; it seeks to replace with a sum of money the earning capacity of the life insured." The court concluded at 36, 173 N.W.2d at 783: "We also decline to limit Pioneer Foundry's recovery to the amount of its investment in the policy and its financial loss (probably nil) upon Secor's death. Pioneer Foundry's investment in the policy was large both quantitatively and relatively."

The holding and reasoning of the Michigan Court of Appeals is persuasive in the instant case, and we conclude that appellant is without standing to object that no insurable interest existed between the decedent and the appellee, or that the parties had entered into an

illegal wagering agreement. The judgment of the District Court dismissing appellant's cause of action must be, and hereby is, affirmed.

AFFIRMED.