Wilcox v. Badger Motor Car Co.

---

MARGARET M. WILCOX, APPELLEE, V. BADGER MOTOR CAR COMPANY, APPELLANT.

FILED DECEMBER 23, 1915. No. 18336.

Contracts: CONSTRUCTION: DIVISIBLE CONTRACT. The contract and bill of sale set out in the opinion, examined, construed together, and *held*, to constitute a divisible contract.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*John W. Parish* and *Amos E. Henely,* for appellant.

*Rosewater & Cotner* and *Charles H. Marley, contra.*

·FAWCETT, J.

· On April 3, 1911, H. E. Wilcox, of Omaha, husband of
plaintiff, entered into a written contract with the de-
fendant for the purchase of two separate lots of automo-
biles, of four and three cars, respectively, and for the ap-
pointment of himself as agent for defendant in the sale
of its cars. The four cars were described in the contract
as "lot one" and the other three as "lot two." The con-
tract provided that he was to pay for the four cars by
conveying to defendant 200 acres of land in Custer county,
and was to pay for the other three cars cash on delivery,
or rather, cash before delivery. Upon delivery of the deed
and an abstract showing good title to the Custer county
land, defendant was to execute to Wilcox a bill of sale for
the four cars in lot one. About 19 days later Wilcox advised
defendant that the land belonged to plaintiff (his wife),
and directed that the bill of sale to the four cars in lot
one be made to her, and on April 26, 1911, the defendant
did as directed. One of the cars in lot one was delivered
by defendant.. Two of the cars in lot one were shipped
to H. E. Wilcox, together with one car of lot two. Wilcox
paid for the one car in lot two, and the three cars were
delivered, Wilcox receiving one and plaintiff two. Later
defendant shipped to Wilcox the remaining one car of lot
one and the remaining two cars of lot two. Wilcox failed
to pay for the two cars of lot two and they were not
delivered to him, nor was the one car of lot one delivered
to plaintiff. Thereupon plaintiff instituted this action
and attached all three of the cars for the purpose of en-
abling her to recover her damages by reason of defend-
ant's failure to deliver the fourth car of lot one. Defend-
ant gave the necessary bond provided by our statute, and
all three of the cars were returned to it at its factory in
Columbus, Wisconsin. Defendant filed an answer in the
action, in which it claimed that the contract for the seven

cars was an entire contract, and counterclaimed for damages by reason of the failure of Wilcox to pay for and receive the two cars of lot two. The trial court held that the contract was divisible and refused to submit defendant's counterclaim to the jury, but submitted only the question of the value of the car of lot one which was not delivered to plaintiff. The jury returned a verdict in favor of plaintiff for $1,589.92. When considering the motion for a new trial, filed by defendant, the trial court stated that unless plaintiff filed "a remittitur on this verdict, so as to reduce it down to the sum of $1,164.50," a new trial would be granted. Thereupon, in open court, plaintiff consented to such remittitur, and judgment was entered for the reduced amount. From this judgment defendant appeals.

It is conceded by the parties that the principal question to be determined in this suit is whether or not the contract of April 3, 1911, is a contract entire or a divisible contract. The determination of this question requires a consideration of the contract of April 3 and the bill of sale of April 26. The latter having been given in compliance with requirements in the former, the two must be construed together in order to determine the rights of the parties.

The contract of April 3 appears to have been carefully drawn. The provisions relating to the sale of the four cars in lot one and the three cars in lot two are separate and distinct and contained in separate paragraphs. It first provides: "That the party of the first part has this day sold, and does hereby sell, to the second party 4 Badger automobiles, being 2 cars of type D, 1 car of type B, and 1 car of type C, all equipped as specified in the first party's catalogue of 1911, and in payment for said cars, the second party has agreed to convey to the first party, as soon as the title papers can be perfected, 200 acres of land in Custer county, Nebraska." Here follows the description of the land. It further provides that the lands will be conveyed by warranty deed, free from all in-

cumbrances except a mortgage for $1,300, and interest on the same from the first of the month in which the contract was made; that an abstract is to be furnished, etc.; and that as soon as the deed and abstract are delivered to the first party it will ship one of the cars; and that the four automobiles covered by this sale shall be designated as "lot one." Here we find a separate and distinct sale by defendant to H. E. Wilcox of four cars designated as lot one, in consideration of the conveyance to defendant of 200 acres of land in Custer county, subject to a mortgage for $1,300.

The next paragraph provides: "It is further agreed that the first party has sold to the second party, and the second party has purchased, and does hereby purchase, from the party of the first part, in addition to lot one, 3 Badger automobiles, to be known and designated as lot two, to be delivered f. o. b. cars at Columbus, Wisconsin, within a reasonable time after being ordered, and on or before September 1, 1911, and that the second party shall pay for the automobiles in lot two the sum of $1,500 less a 25 per cent. discount per car for type D, and $1,250, less a discount of 20 per cent. for types B and C." It then provides for an additional discount for all cars which the party of the second part might sell in excess of five cars. Here we have a separate and distinct contract for the sale of three cars under a separate and distinct designation as lot two. It further provides: "It is further mutually agreed, that the second party shall have the option, as to lot two, of designating the number of automobiles he wishes of the three types above named." No such option is anywhere given in the contract as to the types of the cars to be delivered under lot one.

Then come two separate paragraphs of the contract which clearly show: First, how these cars were to be paid for; and, second, how they were to be delivered. The two paragraphs are as follows:

"It is further mutually agreed that all cars, except those in lot one, purchased under this contract, shall be paid

for before the second party shall be entitled to the possession thereof, and that they shall be shipped with a sight draft attached to the bill of lading.

"It is further mutually agreed that the first shipment shall be one car, as above specified (referring to the one car of lot one which was to be shipped as soon as such deed and abstract are executed and delivered to the first party); that the second shipment shall be two cars of lot one and one car of lot two; that the third shipment shall be one car of lot one and two cars of lot two; that shipments may be ordered by letter or telegram."

The exception in the first of these two paragraphs clearly shows that it was not the intention of the contracting parties that the delivery of the cars in lot one should depend upon the payment for those in lot two, but that all cars "except those in lot one" were to be paid for before the second party should be entitled to the possession thereof. There is no reservation here or anywhere in the contract that delivery of any of the four cars in lot one should depend upon the payment by Wilcox for the cars shipped to him under lot two. The second of the two paragraphs just quoted provides simply for the manner of shipping the last three cars of lot one and the three of lot two. Construing the contract most strongly against the party who prepared it, we construe this paragraph as meaning that the defendant was simply safeguarding itself against a demand for an immediate delivery of all of the cars in lot one, and was reserving to itself the right to ship the last three cars of lot one at the times and in the manner set out in this paragraph of the contract.

The next paragraph of the contract provides: "It is further mutually agreed that the first party shall, upon the delivery to it of the deed and title papers, as hereinbefore provided for said 200 acres of land, execute and deliver to the second party a bill of sale of the four cars, constituting lot one." The next paragraph provides: "That in consideration of the foregoing, and other valu-

able considerations, the party of the first part has agreed to give, and does hereby give, to the party of the second part, the exclusive right, during the term of this contract, to sell Badger automobiles throughout the state of Nebraska; and also the west half of Iowa, except those counties in Iowa now covered by contract for the sale of Badgers."

The bill of sale is in the usual form of such instruments, and provides: "For and in consideration of the conveyance to it of the (land described) at or before the ensealing and delivery of these presents, by Margaret Mitchell Wilcox and Henry E. Wilcox, her husband, of Omaha, Nebraska, the receipt of which deed of conveyance the said Badger Motor Car Company does hereby acknowledge, has granted, bargained, sold, and by these presents does grant, bargain, and sell to said Margaret Mitchell Wilcox four (4) Badger automobiles, being two cars type D, one car type B, and one car type C, the said automobiles being the ones mentioned and described as lot one in a certain written contract entered into between the vendor and said Henry E. Wilcox, bearing date and executed April 3, 1911, which written contract is here referred to and made a part of this bill of sale, and that this bill of sale is made and given upon the express condition and reservation that the terms of said written contract, and especially the conditions thereof as to the time and manner of delivery of said automobiles, shall be complied with and carried out by the vendee, or by said Henry E. Wilcox; and upon the further express condition and reservation that none of said cars, except the first one, shall be delivered until the vendee, or said Henry E. Wilcox, shall have furnished the vendor satisfactory proof that $200 has been paid upon the principal of the note and mortgage given by them January 23, 1911, to Claude S. Sidwell upon the lands above described, which mortgage is recorded in book 83 on page 270 in the registry of deeds of Custer county."

It will be seen from this provision in the bill of sale that the conditions and reservations in the contract of

April 3, subject to which plaintiff took her bill of sale, are described "especially" as those referring to the time and manner of delivery of the automobiles. It contains no reference to any condition in the contract as to payment for the cars in lot two, but provides that none of the cars sold to Mrs. Wilcox in the bill of sale should be delivered until either she or Henry E. Wilcox should furnish the defendant with satisfactory proof that $200 had been paid upon the principal of the note and mortgage on the Custer county land which it had assumed. Construing this instrument, which was also prepared by defendant, under the rule applied to the contract, it cannot be said that Mrs. Wilcox agreed to be bound by any other conditions in the contract of April 3 except the one as to the time and manner of delivery of the cars. We are unable to see how any construction of the contract and bill of sale other than that given by the learned district court could be sustained. Having reached this conclusion upon the concededly controlling question in the case, we deem it unnecessary to consider any of the other matters argued in the briefs.

Finding no error in the record, the judgment of the district court is

AFFIRMED.

LETTON, J., not sitting.

SEDGWICK, J., dissenting.

The defendant company was engaged in the automobile trade. The object of making the contract was to sell automobiles. They contracted seven automobiles, and were to receive cash for three, and possibly more, if the agency succeeded, and for four they took land. If the land deal was completed they wanted to be sure of the cash sales. The provision in the original contract, that one of the automobiles of lot one for which the land was exchanged should be first shipped, and that thereafter the shipment should be so arranged that the four automobiles for which the land was exchanged should not be delivered before

the other three were delivered and the contract completed as to them, would, if Mr. Wilcox was seeking to enforce the contract, as to the four automobiles of lot one, enable the defendant to secure payment for the three automobiles of lot two before, or upon, the delivery of the other four automobiles. This seems to have been the understanding of the parties to that contract, since there has been no other reason suggested for such a specification in the contract, except the suggestion in the majority opinion, that the agreement in the contract and in the bill of sale requiring the automobiles sold for cash to be delivered and paid for as soon as the others, was for the purpose of "safeguarding" the defendant "against a demand for an immediate delivery of all of the cars in lot one." Of course, it could not have that effect, as it was left to Mr. Wilcox to order all of the automobiles immediately if he chose. It was immaterial to the defendant whether the four automobiles should become the property of this plaintiff or of Mr. Wilcox. To reserve and make plain the right which the stipulation as to the manner of shipment of the automobiles gave them, it was specifically provided in the bill of sale of the four automobiles that "the time and manner of delivery of said automobiles shall be complied with and carried out by the vendee, or by the said Henry E. Wilcox." The two writings together, so far as Mrs. Wilcox was concerned, constituted her contract, as stated in the majority opinion. The fact that it was especially agreed in the bill of sale that the provision that "the time and manner of delivery of said automobiles" must be observed shows what the parties considered to be the force and effect of that provision of the original contract, which provided that the automobiles for which cash should be paid should be delivered and paid for at or before the delivery of the automobiles of lot one for which the land was exchanged. These provisions of the bill of sale are explicit, and by their terms this plaintiff was not entitled to enforce the delivery of the four automobiles for which she exchanged her land, unless Mr. Wilcox also complied

with the remainder of the contract by receiving and paying for the other three automobiles.

MORRISSEY, C. J., concurs in this dissent.