OTTO GASPAR, APPELLANT AND APPELLEE, V.
STERLING R. FLOTT AND MARY ELLEN FLOTT,
APPELLEES AND APPELLANTS,
AND MID CITY BANK, INC., A BANKING CORPORATION,
APPELLEE.

307 N.W.2d 500

Filed June 26, 1981. No. 43252.

Michael A. Nelsen of Schmid, Ford, Mooney & Frederick for appellant Gaspar.

Robert F. Peterson of Lydick & Peterson for appellants Flott.

Dirk W. DeRoos and J. Thomas Marten of Kutak Rock & Huie for appellee Mid City.

Heard before BOSLAUGH, MCCOWN, CLINTON, and BRODKEY, JJ., and COADY, District Judge.

COADY, District Judge.

The parties will be disappointed in the brevity of this opinion, but a full statement of the facts would not be helpful. The printed evidence examined snugly fills a box 10 inches by 18 inches by 12 inches. Three documents which have been reviewed as one contract consist

of twenty-two legal size pages. The full bill of exceptions in a prior 9-day jury trial is also a part of this record.

Otto Gaspar, as agent for the Graf family residing in Munich, Germany, hereinafter referred to as Gaspar, purchased two residential apartment-townhouse complexes from Sterling R. Flott and Mary Ellen Flott, hereinafter referred to as Flott. A contract, or contracts, was made up and executed as of April 5, 1974. Eleven pages of the writings were labeled "Offer to Purchase" and the next ten pages were labeled "Management Agreement." The offer to purchase contained the usual details set forth in a purchase contract, consisting of description, consideration, buyer and seller warranties, and written representations. Somewhat unusual were promises by Flott that the minimum monthly gross income would be $95,493 and that the 1975 general real estate taxes would not increase above a stated amount. If the gross was not obtained or the real estate tax ceiling violated, the purchase price was to be reduced by a certain formula. To ensure those promises, Flott promised to provide Gaspar with a letter of credit drawn upon a bank. The document also provided that it was understood that the parties would enter into a management agreement for at least 1 year.

The management agreement referred to the offer to purchase and provided that Flott be paid $60,000 a year to manage the complexes. The balance of the writing contains instructions and procedures for management, as well as a definition of Flott's powers, duties, and responsibilities as manager.

On July 15, 1974, the second defendant herein, Mid City Bank, Inc., hereinafter referred to as Bank, issued Gaspar a letter of credit to guarantee the terms of both the offer to purchase and the management agreement, up to a limit of $150,000. Because no issue has been made and it appears absolutely clear that the Bank, as a guarantor or surety, merely stands in the $150,000 shoes of Flott, no authority will be presented on the point. The Bank has the same rights as Flott, no more

and no less.

Sometime thereafter, Gaspar filed suit against the Bank and Flott, seeking a reduction of the purchase price on the apartment complexes as a result of Flott's failure to meet the rental guarantee set out in the offer to purchase. That was the only breach sued upon, and on September 22, 1977, a jury gave Gaspar a verdict which canceled certain mortgages and awarded judgment against the Bank in the sum of $50,000. No appeal was filed by any party.

After the jury verdict, Gaspar again sued the Bank and Flott upon five additional alleged violations of the offer to purchase and three alleged violations of the management agreement. Both defendants filed answers and the issues were made up. The Bank filed a motion for summary judgment, a hearing was had thereon, and Judge Tesar entered an order which dismissed Gaspar's suit against the Bank. Gaspar appeals that order. We affirm in part and reverse part of that decision.

Flott also filed a motion requesting summary judgment against Gaspar. Gaspar retaliated with a motion for partial summary judgment against Flott. The two motions were heard together, and Judge Grant entered a judgment for Gaspar and against Flott in the sum of $134,605.47. Flott appeals. We affirm with modifications.

Flott and the Bank argue to this court that by reason of the rule of res judicata, Gaspar was barred from prosecuting any further action on the writings making up the parties' contract once the jury verdict was final. Gaspar claims that a contract doctrine of divisible agreements prevents operation of the rule.

To a party wanting a matter decided by the doctrine of res judicata, it seems natural to quote the black letter law repeated in so many cases, such as *Norlanco, Inc. v. County of Madison*, 186 Neb. 100, 181 N.W.2d 119 (1970), wherein it is said: "The rule of res judicata is grounded, first, on a public policy and the necessity to terminate litigation and, second, the hardship on a person by being vexed more than once for the same

cause. The conclusiveness of a prior judgment precluding subsequent litigation of the *same cause of action* between the same parties is much broader in its application than a determination of the questions actually involved in the prior action; the conclusiveness of the judgment *in such case* extends not only to matters actually determined but also to other matters which properly could have been raised and determined and those which were necessarily adjudicated or necessarily implied in the final judgment, whether formally raised or not." The words "same cause of action" and "in such case" were italicized by this writer to draw attention to the limited meaning of the black letter law above set forth.

A cause of action has been defined as consisting of a primary right possessed by the plaintiff and a corresponding duty devolving upon the defendant, combined with a delict or wrong done by the defendant. *City of Alliance v. Cover-Jones Motor Co.*, 154 Neb. 900, 50 N.W.2d 349 (1951). This court, by its ruling on fact situations in several cases, has established that the conclusiveness of a prior judgment, including matters which might have been raised under the doctrine of res judicata, does not apply where a second or latter action is a separate and distinct cause of action. See, *Gayer v. Parker & Son*, 24 Neb. 643, 39 N.W. 845 (1888); *Peters v. Meyer*, 131 Neb. 847, 270 N.W. 312 (1936); *American Province Real Estate Corp. v. Metropolitan Utilities Dist.*, 178 Neb. 348, 133 N.W.2d 466 (1965); *Hickman v. Southwest Dairy Suppliers, Inc.*, 194 Neb. 17, 230 N.W.2d 99 (1975); *Suhr v. City of Scribner*, 207 Neb. 24, 295 N.W.2d 302 (1980). Absent an order for consolidation, there is nothing in the law that requires a party to join in one suit several distinct causes of action. *Suhr v. City of Scribner, supra.* If the reader can keep the above rules in mind, then the numerous cases concerning res judicata, issue preclusion, and collateral estoppel will form a comprehensible pattern of fact situations.

As to actions on contracts, the cases of *Hamilton v.*

*Thrall,* 7 Neb. 210 (1878), *Haurigan v. Chicago & N.W.R. Co.,* 80 Neb. 132, 113 N.W. 983 (1907), and *Farmers Union Cooperative Elevator Federation v. Carter,* 152 Neb. 266, 40 N.W.2d 870 (1950), stand for the proposition that, as a general rule, the covenants of a contract will be considered and held as dependent conditions to be performed by the respective parties unless it is clear that the parties intended them to be independent. Those three cases decided that the contracts therein were not severable, but the case of *Wilcox v. Badger Motor Car Co.,* 99 Neb. 189, 155 N.W. 891 (1915), produced a divisible contract.

At least three other decisions found contract actions to be divisible. In two, *Burwell & Ord Irrigation & Power Co. v. Wilson,* 57 Neb. 396, 398, 77 N.W. 762, 763 (1899), and *Barnes v. Barker,* 113 Neb. 113, 118, 202 N.W. 430, 432 (1925), it was said: "Generally speaking, the test is that where there are several undertakings, each supported by a distinct consideration, the contract is severable." *Reichert v. Mulder,* 121 Neb. 11, 235 N.W. 680 (1931), indicated that whether a contract is entire or several is a question of intentions apparent in the instrument. In an unambiguous contract, it is to be determined from the language, the subject matter, and the construction placed upon it by the parties in light of the surrounding circumstances. The case probably utters the last word when the opinion forthrightly states, "A contract which in its nature and purpose is susceptible of division and apportionment is divisible and severable." *Id.* at 14, 235 N.W. at 682.

Both in his written and oral argument, Gaspar insists that each covenant in a contract can be separately sued upon. We find no authority for or reason in that argument. We are convinced, upon inspection of the evidence herein, that the parties intended two separate contracts or one divisible contract. The offer to purchase and the management agreement provide the basis for two separate and distinct causes of action.

Our decision then requires us to inspect and comment

on Gaspar's amended petition. What he calls the first, second, fourth, seventh, and eighth causes of action, we simply declare to be elements of the breach of his cause of action on the offer to purchase. Therefore, the doctrine of res judicata prevents him from suing on those elements, and Judge Tesar is affirmed in his ruling to that extent. Elements three, five, and six of said amended petition are elements of an alleged breach of the management agreement, and Judge Tesar's ruling is reversed to that extent and the alleged breach remanded to the District Court for trial.

We next consider Judge Grant's ruling which awarded partial summary judgment for Gaspar and against Flott. Gaspar argues that this ruling should be affirmed because the trial court awarded judgment on the basis that Flott failed to timely respond to a request for admissions previously filed by Gaspar. While that presentation is correct, a search of the pleadings shows that it is no answer to a valid defense of res judicata.

Gaspar filed his amended petition on August 3, 1978, and Flott filed an answer thereto on August 22, 1978, wherein the defense of the prior jury action was pleaded. As to the promises contained in the offer to purchase, the conclusiveness of the prior judgment was well and flexing its muscles when Gaspar made his request of Flott for admissions on April 25, 1979. The trial judge had to consider the defense and deny all claims springing from the offer to purchase.

Because this case has more technical problems than any good lawyer could dream up, we have yet to look at the specifics of Judge Grant's order for partial summary judgment. Part of the judgment, $40,159.54 to be exact, was awarded on the claim that Flott used certain rental payments he collected as manager to pay his personal expenses instead of delivering them to Gaspar. We have already decided that there is no bar to a suit on the management agreement and must decide whether this part of the partial summary judgment is valid.

The transcript has made this part of our decision

easy. The request for admissions asked Flott to admit two propositions, which we quote: "12. That subsequent to the sale of the aforesaid apartment complexes by the defendants Flott to the plaintiff, the defendants Flott caused rental income received subsequent to such sale to be used to pay for expenditures incurred by the defendants Flott prior to the sale of the aforesaid apartment complexes to the plaintiff. 13. That the amount of the rental income referred to in Request for Admission No. 12 above was $40,159.54." Flott's failure to deny or admit such request would ordinarily sustain summary judgment because there is no real controverted fact in evidence. But the Flotts did ask leave to file a response out of time, which was refused. On pages 93 and 94 of the transcript are the proffered answers as follows: 12. "Admit" and 13. "Deny. Expenditures were made in the amount of $37,523.88." We find that Judge Grant's ruling on Gaspar's motion for partial summary judgment should be affirmed with the amount of judgment modified to award $37,523.88.

At the time that these matters are once again taken up in the District Court, we suppose that someone will wonder if the Bank is now barred by the rule of res judicata from litigating the $37,523.88 partial judgment we have just approved to Gaspar against Flott. The question is not before us at this time, but it is suggested that the parties carefully read our opinion and observe our holding on the facts in *Midwest Franchise Corp. v. Wakin*, 201 Neb. 450, 268 N.W.2d 737 (1978).

Finally, we must discuss the request of the Bank to charge Gaspar for the costs of preparing the jury trial bill of exceptions and transcript and the supplemental transcript. We deny this request. It must be pointed out that the jury did not consider the same issues as were considered in the motions for summary judgment. We believe this request was made because the subtle distinctions between different ideas — res judicata, issue preclusion, and collateral estoppel — have not been

recognized by the parties. We might also point out that the transcripts need not contain the briefs of the parties to the trial court and that all unnecessary inclusions make our review difficult.

AFFIRMED IN PART, AFFIRMED IN PART AS MODIFIED, AND IN PART REVERSED AND REMANDED.

CLINTON, J., concurs in result.