IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

EHRKE V. MAMOT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SHELBEA EHRKE, SPECIAL ADMINISTRATOR OF THE ESTATE OF
MONTY M. MAMOT, DECEASED, ET AL., APPELLANTS,

V.

JAMIE P. MAMOT AND HERITAGE BANK, APPELLEES.

Filed April 4, 2017.    No. A-16-282.

Appeal from the District Court for Howard County: KARIN L. NOAKES, Judge. Affirmed.

Barry D. Geweke, of Stowell & Geweke, P.C., L.L.O., for appellants Mamot Land and Cattle Co., Mamot Trucking, and Mamot Feedlots.

Larry W. Beucke, of Parker, Grossart, Bahensky, Beucke, Bowman & Symington, L.L.P., for appellees.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

MOORE, Chief Judge.

INTRODUCTION

This is the second appearance of this case before this court. As summarized in this court's previous memorandum web opinion:

> Following Monty Mamot's death, various parties disputed whether Monty's estate was entitled to certain contractual payments and whether it remained obligated to pay an outstanding bank loan. In an attempt to clarify those disputes, the special administrator of Monty's estate and three Mamot business entities jointly brought declaratory judgment actions. The special administrator also sought judgments against Monty's former wife, Jamie Mamot, for unjust enrichment. Finally, the Mamot business entities brought an

- 1 -

interpleader action to determine the proper recipient of the final payment under a contract. The district court dismissed the declaratory judgment actions after determining other adequate remedies were available to the parties. The court also concluded Jamie had not been unjustly enriched and ordered the interpleader funds returned to the Mamot business entities.

*Helzer v. Heritage Bank*, No. A-14-683, 2015 WL 3580736 at *1 (Neb. Ct. App. June 9, 2015) (selected for posting to court website).

In deciding the previous appeal, this court reversed the district court's dismissal of the declaratory judgment and interpleader actions, and we remanded the cause with directions to consider and decide the merits of the parties' claims based upon the evidence previously presented at trial. However, we affirmed the court's determination that Jamie was not unjustly enriched. See *Helzer v. Heritage Bank, supra*.

On remand, in determining the amount of contractual payments owed by the Mamot entities to Monty's estate, the district court found a provision of a contract with respect to the maintenance of life insurance void. It also found that Jamie was entitled to keep certain life insurance proceeds and that Monty's estate remained obligated to pay an outstanding bank loan. The Mamot entities appealed from the court's order on remand.

As discussed below, the district court's order on remand was within the scope of this court's mandate. The court did not err in finding the life insurance provision of the 2006 stock purchase agreement was void or in relying on the remaining terms of the agreement to find that Mamot Entities owed Monty $572,706.36 plus interest. Further, the court did not err in determining that Monty's estate was required to pay the entire mortgage at Heritage Bank, finding that Jamie was entitled to retain the life insurance proceeds, or in determining that no interpleader funds were currently held by the court. Accordingly, we affirm.

BACKGROUND

*Factual Background.*

As the complex factual background of this case and the evidence presented at trial was thoroughly described in our previous opinion, we cite extensively from that opinion:

Monty owned stock in two family businesses; Mamot Land & Cattle Co., Inc. and Mamot Trucking, Inc., and he also had an undivided one-fourth partnership interest in Mamot Feedlots (hereinafter referred to collectively as "Mamot Entities"). On August 31, 2006, Monty entered into a contract with Mamot Entities for the sale of his shares of corporate stock and his partnership interest (hereinafter "stock purchase agreement") for a purchase price of $1,700,000, payable as follows: 25-percent of the purchase price, or $425,000, due at closing and the balance with interest to be paid over 10 years starting in 2007. Each yearly payment totaled $162,659.39 and became due on February 1. Following the execution of the stock purchase agreement, Monty resigned from his roles in Mamot Entities.

As collateral for the payments due under the contract, Mamot Entities agreed to keep two $250,000 whole life insurance policies, # 44599169 and # 42488631, insuring

Monty's life, in full force and effect during the term of the stock purchase agreement. The agreement also required Monty to maintain two $250,000 universal life insurance policies, # 63687601 and # 63711238, which also insured his own life, for the duration of the agreement. In the event of Monty's death during the effective period of the agreement, the benefits from these four life insurance policies were to be applied to any remaining balance due to Monty. The terms of the agreement provided that the benefits from policies # 63687601 and # 63711238 were to be exhausted prior to the benefits from policies # 44599169 and # 42488631. Any death benefits remaining from policies # 63687601 and # 63711238 after the balance of the stock purchase agreement had been paid were to go to Monty's heirs, successors, or assigns. The excess benefits from policies # 44599169 and # 42488631 were directed to the remaining directors of Mamot Entities; Daron Mamot and Kevin Mamot, in equal shares.

On December 19, 2011, Monty's wife, [Jamie], filed for divorce. On February 15, 2012, while the dissolution proceedings were pending, Monty and Jamie obtained a loan from Heritage Bank in the amount of $344,057. As collateral for this loan, they pledged Monty's contractual rights under the 2006 stock purchase agreement with Mamot Entities. The consumer security agreement Monty and Jamie executed contains the following statement describing the collateral pledged as security for the loan: "All contract rights including proceeds of sale from the contract agreement for purchase of corporate stock and partnership interest dated August 31, 2006 between Monty M. Mamot, hereinafter referred to as seller, and Mamot Land & Cattle Co., Inc., a Nebraska corporation, Mamot Trucking, Inc., a Nebraska corporation and Mamot Feedlots, a Nebraska partnership, hereinafter collectively referred to as buyers; whether any of the foregoing is owned now or acquired later; all accessions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to the foregoing (including insurance, general intangibles and account proceeds)." The first payment on this loan became due on February 2, 2013, in the amount of $126,304.44.

On May 30, 2012, Monty and Jamie were divorced pursuant to a decree of dissolution. The court incorporated the parties' property settlement agreement into the decree. The property settlement agreement provided that Jamie would retain the family residence and required Monty to pay off the remaining indebtedness on the residence by using the annual payments he received under the 2006 stock purchase agreement. The property settlement agreement further required Monty to maintain Jamie as the primary beneficiary on life insurance policies # 63687601 and # 63711238.

In July 2012, Monty borrowed a total of $5,000 from [one of the] Mamot Entities. To memorialize these transactions, Monty executed two documents in which he stated that he had borrowed this money against his February 2013 payment under the stock purchase agreement.

Monty died on July 23, 2012. At the time of Monty's death, Mamot Entities owed Monty $572,706.37 under the 2006 stock purchase agreement. Due to Monty's death, Jamie, as named beneficiary, received $501,273.98 in death benefits from life insurance policies # 63687601 and # 63711238. Records from the life insurance company

demonstrate that the additional $1,273.98 Jamie received was interest for the period following Monty's death until the date of payment. Per the terms of the stock purchase agreement, Mamot Entities credited the insurance proceeds Jamie received against the outstanding balance due to Monty under the agreement.

On February 1, 2013, Mamot Entities deposited $87,112.06, an amount which Mamot Entities believed represented the outstanding balance due to Monty under the stock purchase agreement, along with applicable interest, into the Howard County District Court. Mamot Entities later sought to adjust its final payment under the stock purchase agreement to $85,808.25. This amount reflected Mamot Entities having deducted the full amount of life insurance benefits Jamie received (which included interest) whereas the initial deposit had been made under the assumption that the life insurance benefits only totaled $500,000.

Also on February 1, 2013, the special administrator of Monty's estate and Mamot Entities jointly filed suit against Jamie and Heritage Bank. In their operative complaint, the special administrator and Mamot Entities sought a declaratory judgment determining that Mamot Entities owed Monty's estate a total of $85,808.25 as the final payment under the stock purchase agreement. The special administrator also sought a declaratory judgment determining that the life insurance proceeds Jamie received were to be used to satisfy the Heritage Bank loan and for judgment against Jamie, based on the theory of unjust enrichment, in the amounts of the outstanding Heritage Bank loan and the last payment due under the stock purchase agreement. Finally, Mamot Entities, through an interpleader action, sought to have the court determine the proper recipient of the final payment due under the stock purchase agreement.

At the time of Monty's death, the entire Heritage Bank loan debt remained as no payments were due until February 2013. To avoid having interest accrue on the outstanding loan balance, Jamie made a $250,000 payment on September 21, 2012. Following Jamie's payment, the outstanding balance on the loan was $104,522.07. Jamie has filed a claim in Monty's estate to recover the $250,000 payment she had made against the loan.

At the time of trial in May 2014, a Heritage Bank official testified that $104,823.32 remained outstanding on its loan. To partially satisfy its loan, the bank sought to obtain the funds Mamot Entities deposited into the district court. However, the bank was not seeking to obtain any of the life insurance benefits Jamie had received. In addition to its involvement in the present action, Heritage Bank has also filed a claim in Monty's estate to recover the remaining balance due on its loan.

In a written order following trial, the district court dismissed the declaratory judgment actions. The court found declaratory judgments were not appropriate because the special administrator and Mamot Entities had not raised any questions as to the validity or construction of the stock purchase agreement, the property settlement agreement in the decree of dissolution, or the life insurance policies. The court further stated that declaratory judgment was inappropriate because other remedies at law were available. Specifically, the court remarked "In addition, these prayers for relief are not appropriate in a declaratory action because Plaintiffs have other remedies at law available to them. For instance, suits can be filed against [Mamot Entities] by Monty's Estate for the remaining [. . .] payments,

Mamot Entities can file suit against Monty's Estate for breach of contract, Jamie Mamot could file a claim against Monty's Estate for payments owing under the settlement agreement and Jamie Mamot and/or Monty's Estate could seek an enforcement action in the dissolution case."

The court also determined that Jamie had not been unjustly enriched by receiving the life insurance proceeds. The court found adequate legal grounds existed for Jamie to retain the insurance proceeds; namely, the property settlement agreement in the decree of dissolution provided that Monty would maintain Jamie as the beneficiary. Finally, to address Mamot Entities' interpleader action, the court ordered the funds deposited with the court to be returned to Mamot Entities.

*Helzer v. Heritage Bank*, No. A-14-683, 2015 WL 3580736 at *1-3 (Neb. Ct. App. June 9, 2015) (selected for posting to court website).

*First Appeal.*

The special administrator and Mamot Entities appealed from the district court's order following trial, arguing that the court erred when it (1) determined a declaratory judgment was not an appropriate remedy, (2) determined Jamie was not unjustly enriched by receipt of the life insurance benefits, and (3) failed to enter an order on the interpleader action. Jamie and Heritage Bank cross-appealed, also arguing that the court erred in finding a declaratory judgment inappropriate. They also asserted that the court should have determined the final amount owed by Mamot Entities under the stock purchase agreement and ordered the interpleader funds be paid to Heritage Bank.

This court noted the parties' various assertions with respect to the final payment under the stock purchase agreement and the life insurance proceeds. Monty's estate asserted entitlement to the final payment, which it calculated to be $85,808.25. Heritage Bank and Jamie asserted Heritage Bank was entitled to the final payment calculated to be $92,112.06 ($87,112.06 deposited in court plus $5,000 in loans to Monty). Concerning the life insurance proceeds, Monty's estate argued the proceeds should be applied first to the outstanding Heritage Bank loan with any remainder passing into the estate. Jamie asserted a contract right to the life insurance proceeds and argued she had no obligation to pay Heritage Bank.

We concluded that the district court abused its discretion in failing to rule on the declaratory judgment actions, holding that the court should have (1) determined the amount of the final payment due under the 2006 stock purchase agreement, (2) determined the proper recipient of that final payment, and (3) addressed whether the life insurance proceeds received by Jamie should be applied to the Heritage Bank loan. We found that the parties' competing claims were clearly capable of immediate judicial determination and that final resolution of the declaratory judgment actions would have terminated the controversy as to these issues. We reversed the court's order of dismissal as to the declaratory judgment actions and remanded the cause to the district court for its consideration of the underlying merits of the parties' claims and a decision based upon the evidence previously presented at trial.

We found, however, that the district court did not err in determining that Jamie was not unjustly enriched by retaining the life insurance proceeds and affirmed that determination. We also found that Jamie did not have any obligation to Monty's estate to satisfy the Heritage Bank loan, a debt which the divorce decree required Monty to assume solely. We noted that while Jamie might have some obligation to the bank due to her status as a co-borrower, we were not called upon to decide that issue on appeal.

Finally, we determined that the district court erred in dismissing the interpleader action for the same reasons as discussed in connection with the declaratory judgment actions. We noted that the parties' arguments in support of that assigned error mirrored those raised in support of their claims with respect to dismissal of the declaratory judgment actions. We determined that upon remand, the court should determine the interpleader issue based upon the evidence previously presented at trial.

*Proceedings on Remand and Present Appeal.*

This court's mandate was filed in the district court on July 29, 2015. That court thereafter ordered briefing by the parties.

On December 14, 2015, the district court entered judgment on the mandate. The court first considered the loans of $5,000 to Monty from Mamot Land and Cattle (the particular Mamot Entity which made these loans). The court found that although the notes indicated the loans would be repaid when Monty received his annual buyout payment, the notes were not properly secured. The court stated that since Monty died before the loan was repaid, Mamot Land and Cattle should have filed a claim against Monty's estate for repayment. Because there was no dispute that Monty owed $5,000 to Mamot Land and Cattle, the court found that Monty's estate was obligated to pay Mamot Land and Cattle $5,000 to satisfy the loans.

Next, the district court examined the 2006 stock purchase agreement and determined that the life insurance provision of the agreement was void, citing public policy, the insurable interest doctrine, Neb. Rev. Stat. § 44-103(13)(b) (Reissue 2010), and *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015). The court reasoned that the provision requiring Monty to maintain insurance on his own life to pay the debt Mamot Entities owed him created a situation where Mamot Entities benefited upon Monty's death even though they had no continuing economic interest in Monty's life. The court observed that this type of agreement, considered a wager on the life of another, was against public policy at common law. The court found that the provision also circumvented the insurable interest doctrine, codified at § 44-103(13)(b), which requires purchasers and beneficiaries of life insurance policies (except close family members of the insured) to have a legal and economic interest in another person's continued life and health. Relying on the remaining terms of the agreement, the district court found that Mamot Entities owed Monty $572,706.36 plus interest accruing at the rate of 5.3-percent since February 1, 2012.

In addressing the Heritage Bank mortgage, which Monty was required to pay under the terms of the property settlement agreement and divorce decree, the district court noted testimony from a bank representative that there was "never an assignment or anything" against the life insurance policies. The court also observed that the consumer security agreement executed by Monty and Jamie did not indicate that the insurance policy proceeds were assigned to the bank,

but rather, pledged the buyout payments as collateral. The court rejected the argument that Jamie should be required to pay the mortgage to avoid an unconscionable division of property and debt through the divorce. The district court noted this same argument had been made regarding Mamot Entities' unjust enrichment claim, the district court's denial of which had previously been affirmed by this court on appeal. The district court also noted this court's determination that Jamie does not have any obligation to Monty's estate to satisfy the Heritage Bank loan and that any obligation she might have on the note is to Heritage Bank due to her status as a co-borrower. The court determined that Monty's estate is obligated to pay the remaining mortgage at Heritage Bank and that Jamie has the right to be reimbursed for all principal and interest payments she made on the mortgage.

In addressing the proceeds of the life insurance policies, the district court observed that Jamie was a named beneficiary of the policies and did not assign her rights under the policies to Heritage Bank or anyone else. The district court noted this court's determination that Jamie was legally entitled to the proceeds upon Monty's death. The court declared that the life insurance proceeds received by Jamie do not satisfy the obligation under the decree that requires Monty, now Monty's estate, to pay off the mortgage. The court found that Jamie was entitled to keep the proceeds of life insurance policy # 63687601 and # 63711238, that Jamie was not required to apply the proceeds to the Heritage Bank loan, and again stated that Monty's estate was required to pay the entire mortgage at Heritage Bank.

Finally, the district court observed that Mamot Entities deposited $87,112.06 with the court on February 1, 2013, which was returned to Mamot Entities on June 30, 2014 when the initial judgment was entered. Accordingly, the court determined that no interpleader funds were currently being held by the court.

Subsequently, the district court overruled a motion for new trial and supplement to that motion filed by Mamot Entities, and Mamot Entities perfected the present appeal to this court.

ASSIGNMENTS OF ERROR

Mamot Entities asserts, reordered, that the district court erred in (1) finding the 2006 stock purchase agreement void with respect to the provision requiring Monty to maintain life insurance to satisfy a debt owed by Mamot Entities, (2) determining that Mamot Entities was obligated to pay Monty's estate $572,706.36 plus interest at the rate of 5.3-percent since February 1, 2012, (3) determining that the over $500,000 of insurance proceeds received by Jamie did not satisfy Monty's obligation to pay the Heritage Bank loan under the decree and discharge the mortgage of the parties, and (4) finding no interpleader funds were currently held by the court.

STANDARD OF REVIEW

The construction of a mandate issued by an appellate court presents a question of law. *Liljestrand v. Dell Enters.*, 287 Neb. 242, 842 N.W.2d 575 (2014). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Anderson v. Union Pacific RR. Co.*, 295 Neb. 785, ___ N.W.2d ___ (2017).

An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Pettit v. Nebraska*

*Dept. of Corr. Servs.*, 291 Neb. 513, 867 N.W.2d 553 (2015). When a declaratory judgment dispute sounds in contract, the action is treated as one at law. *Timberlake v. Douglas County*, 291 Neb. 387, 865 N.W.2d 788 (2015). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Donut Holdings v. Risberg*, 294 Neb. 861, 885 N.W.2d 670 (2016). When a declaratory judgment action presents a question of law, an appellate court has an obligation to reach its conclusion independently of the conclusion reached by the trial court with regard to that question. *Adams v. State*, 293 Neb. 612, 879 N.W.2d 18 (2016).

## ANALYSIS

*Life Insurance Provision of Stock Purchase Agreement.*

Mamot Entities asserts that the district court erred in finding the 2006 stock purchase agreement void with respect to the provision requiring Monty to maintain life insurance to satisfy a debt owed by Mamot Entities.

We first address Mamot Entities' argument that the district court's finding, that the life insurance provision of the stock purchase agreement was void, violated the law-of-the-case doctrine. Mamot Entities argues that because Jamie never took the position that the provision was void at trial, the district court did not have the power to decide that issue on remand. Mamot Entities argues that this court's mandate restricted the district court on remand to determining an amount owed between $85,000 and $92,000 and that the court went too far in declaring the life insurance provision void.

Under the law-of-the-case doctrine, the holdings of an appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). The law-of-the-case doctrine operates to preclude a reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution. *Id.* After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court. *Klingelhoefer v. Monif*, 286 Neb. 675, 839 N.W.2d 247 (2013). A district court has an unqualified duty to follow the mandate issued by an appellate court and must enter judgment in conformity with the opinion and judgment of the appellate court. *Id.*

With respect to the stock purchase agreement, we concluded that the district court should have determined the amount of the final payment due under the agreement as well as the proper recipient of that payment. We found that the parties' competing claims were clearly capable of immediate judicial determination and that final resolution of the declaratory judgment actions would have terminated the controversy as to these issues. We reversed the court's order of dismissal as to the declaratory judgment actions and remanded the cause to the court for its consideration of the underlying merits of the parties' claims and decision based upon the evidence previously presented at trial. While we noted the parties' claims on appeal as to the amount of the final payment, we did not direct the district court to make a determination of an amount between $85,808.25 (as claimed by Monty's estate) and $92,112.06 (as claimed by Jamie and Mamot Entities). Rather, we directed the court to determine the amount of the final payment due. Such a

determination required the court to examine the terms of the stock purchase agreement, which it did. The court's examination of the terms of the stock purchase agreement was within the scope of this court's mandate, and the court did not violate the law-of-the-case doctrine.

With respect to the district court's determination that the life insurance provision was void, we find no error. A similar situation was discussed by the Nebraska Supreme Court in *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015). In that case, a tenant farmer had a written agreement with his landlord to purchase farmland the tenant had been renting from the landlord and the landlord's sister after the landlord's death. The purchase price was funded by an insurance policy owned by the tenant on the landlord's life. After the landlord's death, the life insurance proceeds were paid to the tenant, who tendered them per the agreement, but the landlord's estate refused to complete the sale. The tenant filed suit for specific performance, and the estate answered, alleging the agreement was void for various reasons, including that the tenant lacked an insurable interest in the landlord's life. The trial court found the land purchase agreement unenforceable because the landlord did not have authority to make the sale on behalf of his sister and the purchase price could not be allocated to a portion of land owned only by the landlord. The court rejected the estate's claim the agreement was void, reasoning that the estate had no standing to make the claim. The court also rejected a counterclaim by the estate for equitable distribution of the insurance proceeds.

On appeal, the Nebraska Supreme Court addressed the estate's claim that the agreement was void because the tenant lacked an insurable interest in the landlord's life. The Court noted that at common law, life insurance policies issued to a party not having an insurable interest in the life of an insured are considered a wager on the life of another and therefore void as being against public policy. *Johnson v. Nelson, supra*. A contract which is clearly contrary to public policy is void. *Id.* The determination of whether a contract violates public policy presents a question of law. *Id*.

The Nebraska Supreme Court then reviewed certain case law with respect to standing and rejected the lower court's conclusion, in reliance on *Ryan v. Tickle*, 210 Neb. 630, 316 N.W.2d 580 (1982), that only the insurer can assert a claim against a beneficiary based on a lack of insurable interest. The *Johnson* court found that *Ryan*, which dealt with a challenge to an insurable interest in the context of standing to claim insurance proceeds, did not preclude the estate's defense that the agreement in *Johnson* was void because it was funded by insurance on the life of someone in whom the owner and beneficiary of the policy had no insurable interest.

In determining whether the defense had merit, the Nebraska Supreme Court looked to § 43-103(13)(b), which provides that an "[i]nsurable interest, in the matter of life and health insurance, exists when the beneficiary because of relationship, either pecuniary or from ties of blood or marriage, has reason to expect some benefit from the continuance of the life of the insured." Because the landlord and tenant were not related by blood or marriage, the Court examined their "pecuniary" relationship. The Court observed that the landlord and tenant were not business partners, had no employment relationship, and did not have a debtor-creditor relationship. The Court concluded that the landlord-tenant relationship in that case was not a pecuniary relationship that could provide the tenant with an insurable interest in the landlord's life. The tenant had no reason to expect pecuniary benefit from the landlord's continued life and benefited from a

sooner death by having to pay fewer insurance premiums. The Court stated that the tenant was effectively gambling that the landlord would die sooner rather than later, which "is precisely the reason why an insurance policy on the life of one in whom the owner and beneficiary of the policy lacks an insurable interest is void as against public policy." 290 Neb. at 715, 861 N.W.2d 715 (2015). The Court concluded that the agreement was void as against public policy because it incorporated a financing mechanism comprised of an insurance policy in which the tenant, as owner and beneficiary, lacked an insurable interest in the life of the insured landlord.

In the present case, the district court first noted that the 2006 stock purchase agreement eliminated any ownership interest Monty had in Mamot Entities, the only remaining relationship being the payments of $162,659.39 per year until 2016. The court stated that the agreement contained a provision requiring that the proceeds of an insurance policy on Monty's life be used to satisfy a debt owed by Mamot Entities to Monty, creating a situation where Mamot Entities benefited upon Monty's death even though it had no continuing economic interest in his life. The court determined that at the time the agreement was made, Mamot Entities could not legally be named as the beneficiary or owner of a policy insuring Monty's life because Mamot Entities did not have a legal and economic interest in Monty's life. The court stated, "Although Mamot Entities is not the named beneficiary on the life insurance policies, if this provision of the [stock purchase agreement] were enforced, they would become the de facto beneficiaries." The court found the financing agreement in this case similar to that presented in *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015) and concluded that public policy, the insurable interest doctrine, § 44-103(13)(b), and *Johnson v. Nelson* required the portion of the agreement requiring Monty to maintain insurance on his own life to pay the debt owed to him by Mamot Entities be declared void.

The district court then examined the other terms of the 2006 stock purchase agreement to determine if they were enforceable. The court observed that while the unenforceable portion of the agreement might be financially important to Mamot Entities, it was not an essential or crucial term of the agreement. The court noted that Monty and Mamot Entities agreed on a buyout amount and the terms of the buyout, observing that if Monty had lived through 2016, the provision regarding his life insurance policy would have had no effect. The court reasoned that Mamot Entities would have continued to pay installments as agreed, and thus, the term regarding Monty's life insurance was not an essential part of the agreement and did not affect the amount or terms of the buyout. The court concluded that the essential terms of the agreement were that Monty leave the businesses and that Mamot Entities pay the agreement amount. The court found that these were common and conventional terms which did not violate public policy and were thus enforceable. Relying on the essential terms of the stock purchase agreement, the court found that Mamot Entities owed Monty $572,706.36 plus interest accruing at the rate of 5.3-percent since February 1, 2012.

We agree with the district court's analysis. As set forth above, there were four whole life insurance policies on Monty's life referenced in the stock purchase agreement--two owned by Mamot Entities and two owned by Monty. Mamot Entities did not have an insurable interest in Monty's life. The corporate entities, as opposed to the shareholders, were not related to him by blood or marriage. Through the stock purchase agreement Monty sold his shares of corporate stock and his partnership interest to Mamot Entities. The remaining pecuniary relationship was that of

parties to the stock purchase agreement. Monty was no longer a business partner, was not an employee, and at the time of the 2006 agreement did not have a debtor-creditor relationship with Mamot Entities. In the event of Monty's death, however, Mamot Entities' obligation to Monty would be reduced by up to $500,000 from the life insurance proceeds.

A contractual provision should not be declared void as contrary to public policy unless it is clearly and unmistakably repugnant to the public interest. *Hearst-Argyle Prop. v. Entrex Comm. Servs.*, 279 Neb. 468, 778 N.W.2d 465 (2010). Although the stock purchase agreement, unlike the agreement in *Johnson v. Nelson*, was not financed solely through the life insurance policy provision, it was still a gamble by Mamot Entities that Monty would die sooner rather than later. Because Mamot Entities lacked an insurable interest in Monty's life, the life insurance provision of the 2006 stock purchase agreement is clearly void as against public policy. See *Johnson v. Nelson*, 290 Neb. 703 at 715. We find no error in the court's conclusion in this regard.

Nebraska case law shows that contract provisions may be severable. See, e.g., *Suburban Air Freight, Inc. v. Aust*, 262 Neb. 908, 636 N.W.2d 629 (2001) (finding void provision in employment contract severable from rest of contract which had legitimate purpose independent of void provision); *Gaspar v. Flott*, 209 Neb. 260, 307 N.W.2d 500 (1981); *Edwards v. Edwards*, 16 Neb. App. 297, 298, 744 N.W.2d 243, 246 (2008). A contract based on considerations, a part of which may be illegal, and a part legal and valid in all respects, will, if separable, be enforced as to its legal provision. *Shevalier v. Doyle*, 88 Neb. 560, 130 N.W. 417 (1911). See, also, *Union Tank Car Co. v. Lindsay Soft Water Corp. of Omaha*, 257 F. Supp. 510 (D. Neb. 1966), affirmed sub nom. *Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477 (8th Cir. 1967) (fact that one part of agreement may be void or unenforceable does not render void entire agreement); Restatement (Second) of Contracts § 184 (1981) (stating the rule of partial enforcement with the omission of an offending but not essential provision).

As determined by the district court, the life insurance provision was not an essential part of the stock purchase agreement. The essential terms were that Monty leave the business and Mamot Entities pay the agreed amount. The district court did not err in finding these provisions enforceable.

*Amount Owed for Final Payment Under Stock Purchase Agreement.*

Mamot Entities asserts that the district court erred in determining that Mamot Entities were obligated to pay Monty's estate $572,706.36 plus interest at the rate of 5.3-percent since February 1, 2012. Mamot Entities does not dispute that $572,706.36 was the amount still owed at the time of Monty's death, but it maintains that the life insurance proceeds should be offset against the amount owed. We have already determined that the court did not err in finding that the life insurance provision of the stock purchase agreement was void. The district court relied on the remaining provisions of the agreement to find that Mamot Entities owed Monty $572,706.36 plus interest. We find no error in this determination.

*Jamie's Retention of Life Insurance Proceeds.*

Mamot Entities asserts that the district court erred in determining that the over $500,000 of insurance proceeds received by Jamie did not satisfy Monty's obligation to pay the Heritage

Bank loan under the decree and discharge the mortgage of the parties. Mamot Entities also argues that Jamie's retention of the life insurance proceeds results in an inequitable division of the marital estate in the divorce action.

Mamot Entities previously made this argument in connection with its unjust enrichment claim, which was denied by the district court following trial. In affirming that determination in the first appeal, we stated:

> The property division in the divorce decree unambiguously required Monty to maintain Jamie as the beneficiary under the two life insurance policies. As the beneficiary under those policies, Jamie was legally entitled to the proceeds upon Monty's death. Because Jamie has chosen to exercise her rights under the divorce decree, she cannot have been unjustly enriched by retaining the life insurance proceeds.

*Helzer v. Heritage Bank, supra* at *6. We also found that Jamie did not have any obligation to Monty's estate to satisfy the Heritage Bank loan and that any obligation she might have was to Heritage Bank due to her status as a co-borrower.

The issue of unjust enrichment was conclusively settled for purposes of this litigation at the time of the previous appeal. See *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014) (law-of-the-case doctrine operates to preclude reconsideration of substantially similar, if not identical, issues at successive stages of the same suit or prosecution). Further, the decree dissolving Jamie and Monty's marriage and settling and dividing their marital property is final and is res judicata as to the rights of the parties to the divorce. See *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986) (absent appeal, decree of dissolution is final and is res judicata as to rights of parties); *White v. White*, 203 Neb. 782, 280 N.W.2d 78 (1979) (decree of dissolution settling and dividing property of parties is not subject to appellate review respecting such division and assignment of property absent timely appeal and when final, is res judicata as to parties on award and assignment of property therein). Mamot Entities was not a party to the dissolution action and may not challenge the provisions of the decree.

In our previous opinion, we determined that the district court should have addressed whether the life insurance proceeds Jamie received should be applied to the Heritage Bank loan. On remand, the court found that Jamie was entitled to keep the proceeds because she was named as the beneficiary of the life insurance policies, the decree required Monty to maintain her as a beneficiary, and Jamie did not assign her rights under the policies to Heritage Bank or anyone else. The court found that the evidence conclusively showed that Heritage Bank did not have an assignment and/or security interest in the life insurance proceeds and determined that the proceeds received by Jamie do not satisfy the obligation of Monty, via his estate, to pay off the mortgage. The court determined that Monty's estate was required to pay the entire mortgage at Heritage Bank. The court did not err in making this determination.

*Interpleader Funds Held by District Court.*

Mamot Entities asserts that the district court erred in finding no interpleader funds were currently held by the court. The court noted that the $87,112.06 deposited by Mamot Entities with the court in February 2013 was returned to Mamot Entities at the time the initial judgment was

entered. Mamot Entities argues that this determination was in error, because Mamot Entities did not cash the check from the court. It also argues that the district court did not follow this court's mandate to determine the interpleader issue based upon the evidence presented at trial.

There was some discussion about the uncashed check at the hearing on the motion for new trial. While it is clear that Mamot Entities did not cash the check for the funds returned by the court prior to that hearing, it is not clear from the record what actually happened with regard to the check upon the conclusion of the hearing. The parties discussed a supersedeas bond in the event the court overruled the motion for new trial. Mamot Entities' attorney suggested that the amount that had been returned by the court be credited toward the cash deposit for a supersedeas bond. The court observed that "if you want to cash the check and deposit some more money with the Court that's fine," but that otherwise payment would have to be stopped on the check originally issued to Mamot Entities by the court. Mamot Entities' attorney observed that the check for the funds returned by the court, dated June 30, 2014, was "already stale." The court observed that if Mamot Entities presented the check to its bank and the check was not accepted, the court could have the clerk issue a new check. The court then declined to discuss the check further and stated that it would take the matter under advisement and set the cash bond in the amount it deemed appropriate. In the order overruling the motion for new trial, the court set an appeal bond in the amount of $713,000 cash to be deposited with the clerk of the court.

It is clear that the court returned the funds which had been deposited with it by Mamot Entities as a result of its first order. We find no error in the district court's determination in its December 2015 judgment on mandate that no interpleader funds were currently held by the court.

The court entered judgment in conformity with this court's opinion and judgment in the previous appeal. See *Klingelhoefer v. Monif*, 286 Neb. 675, 839 N.W.2d 247 (2013). The court followed our mandate by determining that Mamot Entities was obligated to make the final payment under the 2006 stock purchase agreement and that Monty's estate was obligated to pay the Heritage Bank loan. This assignment of error is without merit.

## CONCLUSION

The district court's order on remand was within the scope of this court's mandate. The court did not err in finding the life insurance provision of the 2006 stock purchase agreement was void or in relying on the remaining terms of the agreement to find that Mamot Entities owed Monty $572,706.36 plus interest. Further, the court did not err in determining that Monty's estate was required to pay the entire mortgage at Heritage Bank, finding that Jamie was entitled to retain the life insurance proceeds, or in determining that no interpleader funds were currently held by the court.

AFFIRMED.